ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY *v.* OSTRANDER.

Opinion delivered July 1, 1899.

1. RAILROADS — INTERSTATE COMMERCE — FALSE CLASSIFICATION. — The freight agent of a railroad company has no authority, by means of a false classification of goods received for shipment to another state, to bind a connecting carrier to carry such goods at a rate lower than the regular rate then established and in force. (Page 570.)

2.  SAME—FALSE REPRESENTATIONS OF SHIPPER.—If a shipper, by making
false representations to the agent of a railroad company, obtains a rate
lower than the regular rate then established and in force, a connecting
carrier is not bound thereby.  (Page 571.)

Appeal from Benton Circuit Court.

EDWARD S. McDANIEL, Judge.

### STATEMENT BY THE COURT.

The appellee, C. E. Ostrander, in 1896, moved his home
from Oto, Iowa, to Rogers, Arkansas.  Being the owner of cer-
tain personal property, to-wit, household furniture, sewing ma-
chine, cooking utensils, buggy and about 600 bushels of oats,
which he wished to ship from Oto to Rogers, he applied to the
agent of the Illinois Central Railway Company at Oto for rates
on a car from that place to Rogers, naming the goods he de-
sired to ship.  The agent informed him that he would have to
consult the general agent of the company, and thereupon he
telegraphed the general agent as follows:  "Party wants to
ship 600 bushels of oats to be used as seed, about one thou-
sand pounds of household goods, buggy, etc., as car load of
emigrant movables.  Will rate given on emigrant movables ap-
ply on this?"  The general agent of the Illinois Central replied
that "rates quoted on emigrant outfit from Oto to Rogers, Ar-
kansas, will apply on shipment, including the articles you men-
tion."  The local agent then informed Ostrander that the
through rate to Rogers from Oto on his car would be $79, this
sum being in conformity to the published rates on car load of
emigrant's outfit, but lower than ordinary rates on such goods.  The
goods were thereupon loaded on car at Oto.  Ostrander paid
the $79 freight charges in advance, and received a bill of lad-
ing, showing that goods were consigned to Henry F. Carson,
Rogers, Arkansas, and that charges had been prepaid.

The line of the Illinois Central Company, which issued the
bill of lading, extends only a short distance from Oto towards
Rogers, the point to which the goods were shipped, and the car
had to pass over other lines of railway.  It arrived at Rogers a
few days after its shipment from Oto, having been carried over
lines of different companies, among which were the Santa Fe
Railway Company and the appellant company.  The car had a

way bill attached, showing that the Santa Fe Company had paid to a connecting carrier, from which it received the car at Kansas City, a balance of seventy-eight cents due or claimed to be due for freight. The amount due, as shown by the way bill from Kansas City to Rogers, was $83.33, that being, so the company claimed, the amount of regular charges on that class of freight from Kansas City to Rogers. Ostrander and the consignee, Carson, demanded the goods at Rogers, but the agent of the appellant refused to deliver them, unless the additional charges above mentioned were paid. Ostrander refused to pay, and brought replevin to recover possession of the goods. On the trial it was shown that the term "emigrant movables," according to published rates of the Illinois Central and other railway companies belonging to the "Western Freight Association," included household furniture, farming utensils, etc., of the emigrant, but did not include oats "unless intended for seed or for feeding animals while in transit." Oats not intended to be used for seed or for feeding in transit were subject to ordinary rates, which were higher than those charged for emigrant's movables. Only a small portion of the oats shipped by Ostrander were intended for seed, and none were used for feeding in transit. The remainder, about 565 bushels, were sold by him or fed to stock upon his farm.

There was a judgment in favor of plaintiff, from which the company appealed.

*L. F. Parker* and *B. R. Davidson*, for appellant.

The contract with the original carrier could not deprive appellant of its right to be paid for transporting the car and for amounts of advance charges paid by it to connecting lines. 56 Ark. 439; *id.* 430; 54 Ark. 399; 7 Baxter (Tenn.), 345; 25 Wis. 241; 13 R. I. 578; 6 Allen, 246; 22 Kas. 659; 42 Am. & Eng. Ry. Cas. 503. This was an interstate shipment, and appellant was compelled to charge appellee the ordinary freight rates. Act of Cong. of March 2, 1889; 41 Fed. 592. The original carrier was the agent of appellee, not of appellant. 25 Wis. 241–270; Hutch. Car. § 108; 9 Am. & Eng. Ry. Cas. 41; 6 Allen, 240; 13 Reporter, p. 15. A subsequent carrier has a right to pay the charges claimed by a connecting carrier, and

has a lien for same. Hutch. Car. §§ 477, 478; 25 Wis. 241–270; 6 Allen, 246.

RIDDICK, J., (after stating the facts.)    The only question in this case is whether the appellant company had the right to hold the goods of Ostrander for any charges in addition to those he had paid the Illinois Central Company. Now, conceding that the appellant company had agreed upon joint tariff rates with the Illinois Central and other carriers operating the lines over which the goods of Ostrander were carried, still the evidence shows that the rate quoted to Ostrander was for "emigrant's movables," and that this rate, as agreed upon and published, did not include oats, except such as were to be used by the emigrant for seed or feeding animals in transit. Other oats were subject to higher rates. The agent at Oto testified that Ostrander informed him that the oats were intended for seed. Ostrander denied this, and the agreed statement of facts says that the agent informed Ostrander that he could ship oats at emigrant's rates if they were raised by him. But the agent had no right to change the published rates of the company in that way, and, if he said this to Ostrander, it is evident that he was acting without authority, for, in his telegram to the general agent describing the goods, he says: "Party wants to ship 600 bushels of oats to be used as seed." The general agent, on this information, directed him to bill them at emigrant rates. If this act of the local agent of the Illinois Central bound that company, it certainly did not bind the appellant company, which was not a party to the agreement, and had not authorized it.

An amendment to the interstate commerce act of congress provides that "any common carrier subject to the provisions of this act or, whenever such carrier is a corporation, any officer or agent thereof, who, by means of false billing, false classification, false weighing, or false report of weight, or by any other device or means shall knowingly and wilfully assist, or shall wilfully suffer or permit, any person or persons to obtain transportation for property at less than the regular rates then established and in force on the line of transportation of such common carrier shall be guilty of a misdemeanor." The pun-

ishment for such offense is a fine of not over $5,000, or imprisonment in the penitentiary, or both, in the discretion of the court. Sup. to Revised Statutes of U. S. (2 Ed.) vol. 1, 686; *Baird* v. *St. Louis, I. M. & S. Ry. Co.*, 41 Fed. Rep. 592.

This shipment from Oto to Rogers was interstate commerce, and controlled by the act of congress above mentioned. It is evident, therefore, that the local agent of the Illinois Central had no right to give Ostrander a lower rate on his oats by falsely classifying them as "emigrant movables," when they were not such in fact. The evidence conclusively shows that, with exception of about thirty bushels, Ostrander did not ship these oats for the purpose of using them as seed oats or for feeding stock in transit. He makes no such claim, and the agent therefore had no right to bill them at emigrant rates, for by so doing he in effect gave Ostrander a lower rate on oats than was allowed other shippers, and lower than the regular published rates. In other words, if Ostrander obtained the low rate by representing to the agent that the oats were to be used for seed, he was guilty of a fraud, and neither the appellant or the Illinois Central is bound by the contract obtained in that way. On the other hand, if he stated the truth, and the agent, in order to favor Ostrander, billed the oats at emigrant rates, knowing that they did not come within the published definition of emigrant goods, he was guilty of a violation of the law, and his contract did not bind appellant company. Take any view of the facts sustained by the evidence, and the appellant company was not bound.

We therefore think it had the right to charge for transporting the oats intended for seed according to its regular rates for goods of that kind and quantity. If Ostrander has any remedy, it is against the company making the contract.

Judgment reversed, and cause remanded for a new trial.