(114 App. Div. 747)

### FREY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.   July 12, 1906.)

**1. CARRIERS—CONTRACT FOR TRANSPORTATION OF GOODS—CONSTRUCTION.**

One who intended to ship fruit over defendant's railroad to New York, and from thence on a certain steamer, told the general superintendent of defendant that it was important to get the fruit to New York in time to take the steamer in question, and the superintendent stated that he would give instructions to have the fruit put on a fast train, so as to arrive in time. The superintendent referred the shipper to the train dispatcher, who stated that he would give instructions whereby the fruit would go through in time. *Held*, that there was an express contract on the part of the carrier to transport the fruit in time for the sailing of the steamer.

**2. SAME—SHIPPING RECEIPT—CONDITIONS—OPERATION.**

Where the general superintendent and the train dispatcher of a railroad agreed with a shipper to transport his fruit in time to take the steamer L. sailing from New York, and the shipping receipt contained upon its face in writing the words "For export * * * per S. S. L., sailing December 13th," the agreement to transport so that the shipment might be sent on the steamer in question, was not merged in the shipping receipt, though it had conditions upon the back to the effect that no carrier should be bound to carry in time for any particular vessel.

**3. SAME—TRANSPORTATION—PERISHABLE GOODS.**

A carrier, on receiving fruit for transportation, is bound to forward it to its destination immediately.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 409, 419.]

**4. SAME—ACTIONS—PLEADING.**

A waiver of a provision on the back of a shipping receipt, exempting the carrier from liability unless notice of loss or damage is given within a specified time, is not available to a shipper in an action against the carrier unless pleaded by the shipper.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 721.]

**5. SAME—SHIPPING RECEIPT—CONDITIONS—NOTICE OF LOSS.**

A condition in a shipping receipt exempting the carrier from liability unless notice of loss be given within a specified time has no application to loss from a falling market and delay in transportation.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 670, 711–714.]

**6. SAME—DELAY IN TRANSPORTATION—MEASURE OF DAMAGES.**

A carrier contracted to transport fruit to New York in time to take a certain steamer on which the shipper had engaged refrigerated space, but owing to delay in transportation the fruit was not delivered until after the sailing of the steamer, and it was shipped on another steamer and sold in Liverpool. *Held*, that the shipper was not entitled to recover the difference between the value of the fruit in New York if it had been received there in time for the sailing of the steamer and the amount actually received for it in Liverpool, less freight and expenses, but was entitled to recover the difference between the value of the fruit in New York at the time and place it ought to have been delivered and its value there at the time of delivery, with interest from the time of such delivery, together with the amount paid for refrigerated space on the steamer on which the fruit was to have been shipped, with interest from the time of payment therefor.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 451–461.]

100 N.Y.S.—15

Appeal from Special Term, Monroe County.

Action by John B. Frey, as receiver of the Rogerson Fruit & Cold Storage Company, against the New York Central & Hudson River Railroad Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed on opinion of the referee.

The following is the opinion of the referee (John P. Bowman) :

This is an action brought by the Rogerson Fruit & Cold Storage Company, and continued by its receiver, against the New York Central & Hudson River Railroad Company, for damages through failure on the part of the defendant company to transport four cars of fruit from Rochester to New York in time for the sailing of the steamship St. Louis, leaving that port for Liverpool upon Wednesday, the 13th day of December, 1899, and upon which the plaintiff company had engaged cold storage space in which to ship the fruit to London for the Christmas trade, for which the greater part of it was especially packed, being put in half boxes instead of whole boxes, the latter being the customary method of packing for the American trade. The plaintiff in its complaint asks to recover upon either of two grounds—one upon an express contract on the part of the railroad company to transport the fruit over its line in time for the sailing of the steamer, and the other upon the defendant's common-law obligation as a common carrier for hire to transport freight delivered to it with reasonable dispatch. The plaintiff's principal place of business was LeRoy, N. Y. The fruit was packed there, delivered a little after midnight on December 10, 1899, to the Buffalo, Rochester & Pittsburg Railway for transportation over its line to the defendant's road at Rochester, N. Y., where it arrived and was delivered to defendant about 7 a. m. on December 11th. Upon the 8th and 9th of December, 1899, before the fruit left Le-Roy, Mr. Upton, one of the directors of the plaintiff company, who had been a shipper over the defendant company's road for many years, had two conversations with Mr. Bradfield, the defendant's general superintendent at Buffalo, with whom he was well acquainted. He told Mr. Bradfield how important it was to get the fruit through to New York in time to take the Wednesday steamer; that it was intended for the Christmas trade. Mr. Bradfield said he would do everything in his power to get the fruit through; that he would give directions to have it put on a fast train, and send it right straight through; adding, "You need not fret about that. If you get them to Rochester, we will get them through." Bradfield further said that he would instruct his representative, Mr. Drexelius, to see that his instructions were carried out, and in the second conversation referred Upton to Mr. Drexelius; saying that the latter was the train dispatcher, and had full charge of all defendant's cars. Upton, following Bradfield's directions, then had a talk with Drexelius, who was the train dispatcher on defendant's road at Buffalo, in the course of which Drexelius said: "I will instruct the yardmaster at East Rochester that the moment these goods get there, to put them in a fast train and send them to New York. You need not fret about it a bit; they will be there in time for the steamer," and in response to a question from Upton about the time when they would get to New York, Drexelius replied, "They will be there Tuesday morning." This evidence, standing wholly uncontradicted, is sufficient to establish an express contract on the part of the defendant to transport the fruit to New York in time for the sailing of the steamer, and not later than Tuesday morning.

The defendant contends that these conversations were not binding upon the defendant, but were merged in the shipping order and shipping receipt, which were subsequently issued by the freight agent of the Buffalo, Rochester & Pittsburg Railroad Company at LeRoy, at the time of the departure of the cars from that place, and which, taken together, may be fairly considered to constitute a bill of lading for the fruit, one of the conditions upon the back of the receipt being that no carrier of the goods should be bound to carry the property by any particular train or vessel, or in time for any particular market, or otherwise than with as reasonable dispatch as its general business would permit. It would seem to be sufficient answer to this to say that the shipping receipt

contains upon its face in writing the words, "For export to London, Eng., per SS. St. Louis, sailing 13 Decr." It is true that these words were at variance with the printed conditions upon the back of the shipping receipt, but in such cases the rule seems to be well settled that the written words must prevail. Babcock v. L. S. & M. R. R. Co., 49 N. Y. 491; Miller v. H. & S. J. R. R. Co., 24 Hun, 607. It may also be said that they do not, in express terms, require defendant to carry goods in time for the sailing of the steamer, but it seems clear that the defendant's agreement, as made out from all the shipping documents and the oral negotiations not inconsistent therewith, was to carry the goods to New York City and alongside the steamship St. Louis in time for her sailing on Wednesday, December 13th. But, assuming that there was no express contract between the parties requiring the defendant to transport the fruit within any given time, the defendant was liable under its common-law obligation as a carrier, which required it not only to transport the goods to their destination, but to deliver, or offer to deliver, them to the consignee within a reasonable time. Sherman v. Hudson River R. R. Co., 64 N. Y. 254. When the fruit arrived at Rochester, it was received by the defendant's employés, who said that they had been on the lookout for it, and had had especial instructions in regard to it, and in pursuance of such instructions the four cars were attached to a through fast freight train, running on schedule time over the defendant's road, which left Rochester about 1 o'clock in the afternoon of December 10th bound for New York. The usual and ordinary time of this train, which was known as the "Meat Train," between Rochester and New York was about 11 hours, and the ordinary and usual time required by defendant's through fast freight trains from Rochester to New York was from 24 to 28 hours. The cars were billed through to the freight terminus of defendant's road at Sixtieth street in the city of New York, but for some cause, which does not appear, they did not go to the city of New York, but arrived at Weehawken, the terminus of the West Shore branch of defendant's road, on cars were attached to a through fastfreight train, running on schedule time the opposite side of the river from New York, about 2:50 p. m. on December 13th, and after the steamer St. Louis had sailed. It further appeared that the defendant did not deliver, or offer to deliver, the fruit to plaintiff's consignee until some time upon the 14th day of December, 1899. It may fairly be concluded, then, that the cars, if they had been carried over the defendant's road in the ordinary and usual way, would have arrived in New York City some time between 1 and 5 o'clock in the afternoon of December 12th, and if they had not in some way been detached from the meat train they would have arrived much sooner. The goods were perishable, and in such case a railroad corporation, on receiving them for transportation, is bound to forward them immediately to their destination. Tierney v. N. Y. C. & H. R. R. Co., 76 N. Y. 305. It follows, therefore, that the defendant road failed to transport the fruit between the points named with due diligence and within a reasonable time, and is liable to plaintiff for the consequent breach of its common-law obligation.

The defendant, however, seeks to relieve itself under either phase of the case, on the ground that the conditions printed upon the back of the shipping receipt expressly exempt it from any liability unless notice of loss or damage is given to the carrier in writing to the agent at the point of delivery promptly after the arrival of the property, and, if delayed for more than 30 days after the delivery of the property, and after due time for the delivery thereof, the carrier shall not be liable in any event. No notice required by the conditions upon the back of the receipt was ever given defendant, but the plaintiff contended that defendant had waived the benefits of this provision. But, as there was no allegation of waiver in the complaint, the case comes squarely within the rule as laid down in Glaser v. Home Ins. Co. (Sup.; Dec. 2, 1905) 96 N. Y. Supp. 136, which requires that the plaintiff, if he desires to plead a waiver by defendant of any condition with which he has not complied, he must allege the condition claimed to have been waived and the facts constituting such waiver. Moreover, if a waiver had been alleged, none was proved, for mere delay, silence, or negotiations looking to a settlement cannot constitute a waiver. Glaser v. Home Ins. Co., supra; Pope Mfg. Co. v. Rubber Goods Co., (Sup.; Jan. 31, 1906) 97 N. Y. Supp. 73.

Conceding, however, that there was no waiver by defendant, nevertheless defendant's contention as to the necessity for notice of loss or damage would seem to be completely disposed of by the reasoning in an almost parallel case recently decided, where the court holds that the clause referred to has no application to loss or injury to the shipper from a falling market caused by delay. Johnson v. Missouri, Kansas & Texas R. R. Co., 107 App. Div. 375, 95 N. Y. Supp. 182.

The only remaining question is as to the measure of damages. The defendant claimed that its liability was measured by the difference between the value of the fruit in New York City if it had been received there in time for the sailing of the steamer, and its value at the same place when it was actually received and after the steamer had sailed. The plaintiff contends that it is entitled to recover the difference between the value of the fruit in New York if it had been received there in time for the sailing of the steamer and the amount actually received for it in Liverpool, less freight and expenses. The defendant did not contract to carry the fruit to London, the point of ultimate destination, but to New York only. The measure of damages in this state in such a case, both on principle and upon the authorities, is the difference in the value of the goods at the time and place they ought to have been delivered and the time of their actual delivery. The rule, in the language just given, is clearly set forth in Sherman v. Hudson River R. R. Co., 64 N. Y. 254, following the earlier cases of Marshall v. N. Y. C. R. R. Co., 45 Barb. 508, affirmed in 48 N. Y. 660, and Gregory v. McDowel, 8 Wend. 435, and is found, in substance, in all the cases in this state cited in behalf either of the plaintiff or defendant. In the Johnson Case, referred to above, which is closely analogous to the case at bar, the goods were shipped over the defendant railroad from points in Texas, consigned to Liverpool by the way of Boston, and the court held that the obligation of the defendant railroad company terminated upon the delivery of the property to the steamship company at the port of Boston; that port being the point at which the defendant's contract of carriage terminated, and the court allowed damages at Boston, and not at Liverpool. In one or two of the cases cited evidence of damage at the ultimate point was received, but only to aid in fixing damages at the point where the defendant's contractual obligation terminated, and for want of better evidence of the value at that point. Marshall v. N. Y. C. R. R. Co., 45 Barb. 506; Holden v. N. Y. C. R. R. Co., 54 N. Y. 662. The case at bar seems stronger than any of those cited. The defendant transported the fruit to New York, where it was delivered to and received by Mr. Rogerson, the plaintiff's president, and Mr. Zucca, the consignee at London. Upon such delivery and acceptance the defendant's liability was then fixed, and could not afterwards be enlarged by any act of the plaintiff. On the contrary, it was the plaintiff's active duty to use all ordinary care and make all reasonable exertion to render the loss as light as possible. Hamilton v. McPherson, 28 N. Y. 72, 84 Am. Dec. 330.

Rogerson and Zucca, after some examination of the fruit to ascertain its condition, and after consultation with other fruit men in New York City, shipped the fruit to Liverpool upon the steamship Lucania, sailing from New York to that port on the 16th day of December, where she arrived late at night on December 24th. Rogerson and Zucca were unable to obtain refrigerated space on the Lucania, which was the first steamer sailing for an English port after the sailing of the St. Louis on the 13th of December. The fruit arrived in Liverpool in badly damaged condition, and was sold at public auction shortly after its arrival for $1,185.60. A small portion of the fruit was packed in barrels, a form of package as well adapted for the New York as the London market. The evidence of Mr. Zucca, which must be taken as not unfavorable to the plaintiff, shows that the market value of the entire shipment in New York after the St. Louis had sailed was about $3,500, and it further appeared that half-boxes of fruit were sometimes sold in the New York market. Under these circumstances, it cannot be said that the plaintiff, by shipping the fruit in nonrefrigerated space to Liverpool, which was not the market for which the fruit was packed or was first intended, by steamer sailing on December 16th, which did not and could not reach Liverpool or London in time for the Christmas trade, used such reasonable care and diligence as was demanded of it to render the defendant's liability as small as possible.

It follows that the plaintiff should recover the difference between the value of the fruit in New York City at the time and place it ought to have been delivered on December 12, 1899, and its value at the same place at the time of its actual delivery, with interest from December 13, 1899, together with the amount paid by plaintiff for refrigerated space upon the steamship St. Louis, with interest from the time of payment.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Harris & Harris, for appellant.

Elbridge L. Adams, for respondent.

PER CURIAM.    Judgment affirmed, without costs to either party, on opinion by Bowman, Referee.

––––––––

(114 App. Div. 623)

### FREY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.    July 12, 1906.)

COSTS—EXTRA ALLOWANCE.

An action by a shipper against a carrier for breach of a contract, whereby the latter agreed to transport goods in time for shipment by a certain steamer, did not involve such a difficult question as to the true measure of damages, where the issues of fact were clearly defined, and the evidence procured in the ordinary way and without unusual expense, as to bring the case within Code Civ. Proc. § 3253, authorizing an extra allowance of costs in a difficult and extraordinary case.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Costs, §§ 623, 624.]

Appeal from Special Term, Monroe County.

Action by John B. Frey, as permanent receiver of the Rogerson Fruit & Cold Storage Company, against the New York Central & Hudson River Railroad Company. From an order granting plaintiff extra allowance, defendant appeals. Reversed, and motion denied.

The action was commenced in May, 1901, in the name of the Rogerson Fruit & Cold Storage Company, a corporation which has since the commencement of this action been dissolved, and of which the plaintiff has been appointed permanent receiver, to recover damages for the alleged neglect of the defendant to properly transport certain fruit upon its railroad to its proper destination. After issue was joined, by stipulation of the parties the case was sent to a referee to hear, try, and determine all the issues involved.

The sole question involved upon this appeal is whether or not the trial was difficult and extraordinary, within the meaning of section 3253 of the Code of Civil Procedure, and so as to entitle the plaintiff to an extra allowance.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Daniel M. Beach, for appellant.

Elbridge L. Adams, for respondent.

McLENNAN, P. J.    The moving papers fail to show any facts which render this case extraordinary. It is assumed that the plaintiff's contention is correct, that the defendant neglected or failed to perform its duty as common carrier, in that it failed to transport the goods delivered to it by the company of which the plaintiff is receiver, so that