*ST. LOUIS & S. F. R. CO. v. MOUNTS.

No. 3010.  Opinion Filed December 8, 1914.·

(144 Pac. 1036.)

1. **COMMERCE—Interstate Shipments—State and Federal Laws.** Since Act Cong. June 29, 1906, c. 3591, sec. 7, 34 Stat. 593 (U. S. Comp. St. 1913, sec. 8592), the federal statutes, supplemented by the common law as declared by the federal courts, have superseded all state laws pertaining to the substantive rights of parties to an interstate shipment of property; but, in respect to remedies and procedure, the state laws are applicable in state courts.

2. **CARRIERS—Interstate Shipments—Holder of Bill of Lading —Right of Action—Connecting Carriers.** Under Act Cong. June 29, 1906, c. 3591, sec. 7, 34 Stat. 593 (U. S. Comp. St. 1913,

---

*Appealed to the Supreme Court of the United States.

sec. 8592), the only new right of action given the legal hold-
er of a bill of lading in interstate commerce shipments is
against the initial carrier, where the primary cause of lia-
bility is upon the subsequent connecting carrier.

**3**    **ASSIGNMENTS—Carriers—Claim for Lost Shipment—As-
signee of Bill of Lading—Right of Action.** A right of action
against an intermediate or terminal connecting carrier, in an
interstate shipment, for loss of property in transit resulting
from its negligence is assignable; and where, as a result of such
loss, the property does not exist, and where the bill of lading
embracing the same has been surrendered to the carrier by the
shipper in order to obtain delivery to him of other property
embraced in such bill, the assignee may sue in his own name
upon such right of action without showing that he is the ac-
tual holder of such bill.

**4.**    **CARRIERS—Interstate Shipment—Contract Limitation of
Liability—Validity.** In an interstate shipment of property, a
stipulation limiting the carrier's liability to the agreed value
of the property is valid, even when loss is due to the carrier's
negligence, if the shipper himself has declared the value, ex-
pressly or by implication, the carrier accepting the same in
good faith as the real value, and the rate of freight being
fixed in accordance therewith.

**5.**    **SAME—Undervaluation—Effect.** An undervaluation of proper-
ty in fixing interstate freight rates based upon value, whereby
the shipper obtains a lower tariff rate than the actual value of
the property requires, is prohibited by law; and a stipulation in
a shipper's contract for the release of a carrier from liability
for loss of the property in excess of the amount at which such
property is so undervalued, if the carrier has actual knowledge
of such undervaluation, is void, and can neither be made the
basis of an action nor of a defense.

**6.**    **SAME—Estoppel.** Where there has been an unlawful declared
or agreed undervaluation of property in fixing tariff rates in
interstate shipments without the actual knowledge thereof on
the part of the carrier, the shipper is estopped to recover
more than such declared or agreed value.

**7.**    **CARRIERS—Loss of Interstate Shipment—Burden of Proof—
Release of Liability.** The burden is upon an interstate car-
rier, who has negligently lost property in transit, claiming a
release to the amount of the shipper's declared or agreed
value of such property, to prove all the facts essential to such
defense, including a valid stipulation of release.

**8.**    **APPEAL AND ERROR—Evidence—Harmless Error—Com-
petency—Value—Presumptions—Opinion Evidence.** A farmer
70 years old, who has bought, sold, and handled horses practi-
cally all his life, and who testifies that he knows the market
value of his own stallion in question, is **prima facie** qualified
to state the value of the same.

(a)  It is not reversible error to permit such farmer to state further that he paid $1,500 for such stallion.

(b)  It appearing that such testimony was given at the place where defendant carrier was bound to have delivered such stallion, and that such witness resided within five miles thereof, it will be presumed, in the absence of evidence to the contrary, that such witness referred to such place as the place of such valuation.

9.    TRIAL—Verdict—Construction.  In an action for $1,700 as the value of a stallion, where the only evidence of value was the testimony of the owner that the stallion was worth $1,500, a verdict for "the sum of (12.00) twelve hundred" will be construed to be a verdict for $1,200.

(Syllabus by Thacker, C)

*Error from District Court, Tillman County;*

*J. T. Johnson, Judge.*

Action by John H. Mounts against the St. Louis & San Francisco Railroad Company, for the value of a stallion alleged to have been negligently killed in transit in an interstate shipment. Judgment for plaintiff for $1,200, and defendant brings error. Affirmed.

*W. F. Evans, R. A. Kleinschmidt, Fred E. Suits,* and *E. H. Foster,* for plaintiff in error.

*Mounts & Davis* and *Gray & McVay,* for defendant in error.

Opinion by THACKER, C.  Plaintiff in error will be designated as defendant, and defendant in error as plaintiff, in accord with their respective titles in the trial court.

The essential facts, when not stated, are necessarily presupposed by the propositions stated and the questions discussed in this opinion, and will therefore be understood.

Under section 3898, St. Okla. 1893, and section 4268, St. Okla. 1890 (sections 4681 and 6740, Rev. Laws 1910), a right of action is assignable unless arising out of a pure tort; and, in the present case, where the right is to recover of a common carrier for the negligent killing of a stallion in transit from a place in another state to Frederick, Okla., the plaintiff, as assignee

of John Cassidy, the owner and shipper, is entitled to maintain this action against the defendant because it arises out of the contract of shipment and is not a pure tort, notwithstanding the action, as brought, is not on the contract and sounds in tort. *Chicago, R. I. & P. Ry. Co. v. Bankers' Nat. Bank,* 32 Okla. 290, 122 Pac. 499; *Kansas, M. & O. Ry. Co. v. Shutt,* 24 Okla. 96, 104 Pac. 51, 138 Am. St. Rep. 870, 20 Ann. Cas. 255. Also see 1 R. C. L. sec. 7, p. 321, and *Hobbs v. Smith,* 27 Okla. 830, 115 Pac. 347, 34 L. R. A. (N. S.) 697.

Under the Carmack Amendment (Act June 29, 1906, c. 3591, sec. 7, 34 Stat. 593 [U. S. Comp. St. 1913, sec. 8592]), to the Interstate Commerce Law (Act Feb. 4, 1887, c. 104, sec. 20, 24 Stat. 386), the right of action against an initial carrier is extended to cases where the primary cause of liability is upon a subsequent connecting carrier and in favor of the lawful holder of the receipt or bill of lading issued by the carrier; but it is further provided that such initial carrier may recover from such connecting carrier "the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof." Except as to the said extension of the right of action to the cases specified above, which is the only new right given the shipper by the Carmack Amendment, that amendment is merely affirmatory of the pre-existing law in this respect. 36 Cyc. 1073-1077; *U. S. v. Barnes,* 222 U. S. 513, 32 Sup. Ct. 117, 56 L. Ed. 291; *Hendrix v. U. S.,* 219 U. S. 79, 31 Sup. Ct. 93, 55 L. Ed. 102; *Great Northern R. Co. v. U. S.,* 208 U. S. 452, 28 Sup. Ct. 313, 52 L. Ed. 567.

Under the former law, as well as the present law, bills of lading stood as the substitute and representative of the goods described therein, and, although not "negotiable instruments" in the full sense in which that term is applied to bills and notes, the transfer of the bill passed to the transferee the transferror's title to the goods described. 6 Cyc. 424; 4 Elliott on Railroads, 1426, 1428; 1 Hutchinson, Carriers (3d Ed.) 175; *The Carlos F. Roses,* 177 U. S. 655, 20 Sup. Ct. 803, 44 L. Ed. 929; *The Tele-*

*graph v. Gordon,* 14 Wall. 258, 20 L. Ed. 807; *Conrad v. Atlantic Insurance Co.,* 1 Pet. 386, 7 L. Ed. 189; *Pollard v. Vinton,* 105 U. S. 7, 26 L. Ed. 998; *North Pennsylvania R. Co. v. Commercial Nat. Bank,* 123 U. S. 727, 8 Sup. Ct. 266, 31 L. Ed. 287.

As against an intermediate or terminal carrier, it may be that, by reason of such designation of the lawful holder of the bill of lading as having the right of action against the initial carrier, no one can have any right of action inconsistent with that of the owner of the property as evidenced by the receipt or bill of lading, where there is no judgment evidencing such ownership; but, as against an intermediate or terminal carrier, the right of action is not necessarily evidenced by the receipt or bill of lading, and the owner of the property or his assignee of the cause of action is *prima facie* entitled to sue.

It would seem, if we are correct in assuming that the generally known and uniform practice of such carriers is to require a surrender of the bill of lading as a condition precedent to a delivery of freight to the consignee, that the bills in this case were delivered to the defendant when John Cassidy received and paid the extra freight charges for the other and remaining property embraced in the same shipment at Frederick, which extra charges the defendant claims were in correction of an error in weight provided for in such bills. If defendant has such possession of these bills, it seems certain that John Cassidy's assignment of his cause of action would operate to give the plaintiff the right to sue, such cause of action being the only right that survives the death of the stallion. Indeed, if the right of action is necessarily in the holder of the bill of lading, it would seem that such assignment by a holder would operate as an equitable assignment of the bill itself, and constitute the assignee the equitable holder; and, under the practice in this state, there appears to be no obstacle to an action by such equitable holder in his own name. We do not understand the state laws to be superseded by the federal in respect to remedies and procedure, nor except in respect to the substantive rights of the parties to such shipments. *Prigg v. Pennsylvania,* 16 Pet. 539, 10 L. Ed. 1060;

*Bank of Alabama v. Dalton,* 9 How. 522, 13 L. Ed. 242; *Dulles v. Jones,* 9 How. 530, 13 L. Ed. 245; *McGoon v. Scales,* 9 Wall. 23, 19 L. Ed. 545.

A farmer, 70 years old, who has bought, sold, and handled horses practically all his life, and who testifies that he knows the market value of his stallion, is *prima facie* qualified to testify as to the value of the same; and it was, therefore, not error to permit John Cassidy to so testify in this case. *St. Louis & S. F. R. Co. v. Young,* 30 Okla. 588, 120 Pac. 999. Nor was it reversible error to permit him to testify that he paid $1,500 for the stallion three years before it was killed. *Burgess et al. v. Felix,* 42 Okla. 193, 140 Pac. 1180.

It appearing that Mr. Cassidy at the time lived at (or within five miles of) Frederick, which was the place of destination of the stallion when negligently killed, and the place where the trial was held, it will be presumed, in the absence of anything appearing to the contrary, that his testimony given in such trial at that place as to the value of the stallion referred to its value at such place; and there was therefore no error in this respect. *Lachner Bros. v. Adams Express Co.,* 72 Mo. App. 13.

The burden is upon the defendant carrier, claiming release by stipulation with the shipper from liability for any amount in excess of $100, which is less than the actual value of the property, in an interstate shipment, to prove all the facts essential to such defense. 4 R. C. L. 920; *Louisville & N. R. Co. v. Tharpe,* 11 Ga. App. 465, 75 S. E. 677; *Irby v. Southern Express Co.,* 96 S. C. 354, 80 S. E. 613; *International & G. N. R. Co. et al. v. Rathblath et al.* (Tex. Civ. App.) 167 S. W. 751. And, of course, he must show a valid release of liability for the actual loss sustained in excess of said $100. 4 R. C. L. 920.

Under the Carmack Amendment (Act June 29, 1906, c. 3591, sec. 7, 34 Stat. 593 [U. S. Comp. St. 1913, sec. 8592]) to the Interstate Commerce Law (Act Feb. 4, 1887, c. 104, sec. 20, 24 Stat. 386) these statutes, supplemented by the common law as declared by the federal courts, where such common law is not inconsistent with such statutes, are the sole measure of

the rights and duties of both shipper and common carrier in interstate shipments of property. *Adams Express Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; *Wells Fargo & Co. v. Neiman-Marcus Co.,* 227 U. S. 469, 33 Sup. Ct. 267, 57 L. Ed. 600; *Kansas City Southern Ry. Co. v. Carl,* 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; *Missouri, K. & T. Ry. Co. v. Harriman Bros.,* 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; *Great Northern Ry. Co. v O'Connor,* 232 U. S. 508, 34 Sup. Ct. 380, 58 L. Ed. 703; *C., R. I. & P. Ry. Co. v. Cramer,* 232 U. S. 490, 34 Sup. Ct. 383, 58 L. Ed. 697; *Atchison, T. & S. F. Ry. Co. v. Robinson,* 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901; also, *Chicago, R. I. & P. Ry. Co. et al v. J. E. Harrington et al., ante,* 143 Pac. 325; *St. Louis & S. F. R. Co. v. Bilby,* 35 Okla. 589, 130 Pac. 1089; *Missouri, K. & T. Ry. Co. v. Walston,* 37 Okla. 517, 133 Pac. 42; *St. Louis & S. F. R. Co. v. Zickafoose,* 39 Okla. 302, 135 Pac. 406.

A common carrier engaged in interstate commerce may limit his liability to a value of the property declared or agreed to by the shipper, when the contract is fairly entered into for the lawful freight rate, and neither rebating, false billing, discrimination, nor preference is chargeable to such carrier. See cases last above cited.

Although a horse killed was worth $1,200 or $1,500, a transportation contract between the owner and the defendant, limiting the defendant's liability as carrier to an agreed value of $100, is ordinarily valid and binding; but, in an action for more damages, such limitation appears from the above cited cases to have been allowed and allowable as a defense only upon the grounds of and when the facts show an estoppel. In the present case the initial carrier knew the stallion was worth more than $100 and should not be shipped at a released value rate. See all cases last above cited, and especially the following: *Adams Express Co. v. Croninger, supra; Wells Fargo & Co. v. Neiman-Marcus Co., supra; Kansas City Southern Ry. Co. v. Carl, supra;* and *Atchison, T. & S. F. Ry. Co. v. Robinson, supra,* which reverses same case in 36 Okla. 435, 129 Pac. 20, and which

was authority for reversal of *Atchison, T. & S. F. Ry. Co. v. Moore,* 36 Okla. 433, 129 Pac. 24, in the United States Supreme Court.

A schedule of freight rates duly filed with the Interstate Commerce Commission, which has not been suspended nor disapproved, fixes and determines the legal rates that must be charged for interstate shipments. *In the Matter of Released Rates,* 13 Interst. Com. Com'n R. 550; *Kansas City Southern Ry. Co. v. Carl, supra,* and other federal cases cited above.

Good faith is required in applying the legal rates to commodities; and any contract intentionally made for an interstate shipment of freight upon a false classification or undervaluation, and therefore at more or less than the legal rate, is illegal and void in this respect. See cases already cited, especially the two last above, and *Wells Fargo & Co. v. Neiman-Marcus Co., supra.*

Rebating and false billing are prohibited and made criminal offenses. U. S. Comp. St. 1913, sec. 8574; *Kansas City So. Ry. Co. v. Carl, supra; Great Northern Ry. Co. v. O'Connor, supra; Atchison, T. & S. F. Ry. Co. v. Robinson, supra.*

A stipulation, limiting the carrier's liability to the agreed value of the property, is valid even when loss is due to the carrier's negligence, if the shipper has himself declared the value, expressly or by implication, the carrier accepting the same in good faith as the real value, and the rate of freight being fixed in accordance therewith. *In the Matter of Released Rates,* 13 Interst. Com. Com'n R. 550; also *Adams Express Co. v. Croninger, supra,* and other cases next following same.

The actual value of property is the only lawful basis in fixing interstate freight rates upon value; and a stipulation, limiting a carrier's liability to an undervaluation by the shipper in consideration of a reduced freight rate, is void if the carrier accepted such undervaluation and gave such reduced rates with actual knowledge thereof. *In the Matter of Released Rates, supra; Adams Express Co. v. Croninger, supra,* and other cases next following same.

In *Adams Express Co. v. Croninger, supra,* which cites 13 Interst. Com. Com'n R. 550, the carrier did not know the value of the property, and the shipper was denied the right to recover more than the declared value, upon which he obtained a lower rate, in consideration of his release of the carrier from liability above that amount, upon the ground of estoppel only. The other cases cited above, following the Croninger case, have denied the shipper's right to recover more than his declared value upon the same ground.

In *Kansas City S. Ry. Co. v. Carl, supra,* which also cites 13 Interst. Com. Com'n R. 550, it is said:

"But when a shipper delivers a package for shipment and declares the value, either upon request or voluntarily, and the carrier makes a rate accordingly, the shipper is estopped, upon plain principles of justice, from recovering, in case of loss or damage, any greater amount. The same principle applies if the value be declared in the form of a contract. If such a valuation be made in good faith, for the purpose of obtaining the lower rate applicable to a shipment of the declared value, there is no exemption from carrier liability due to negligence forbidden by the statute when the shipper is limited to a recovery of the value so declared. The ground upon which such a declared or agreed value is upheld is that of estoppel. * * * The valuation declared or agreed upon as evidenced by the contract of shipment upon which the published tariff rate is applied must be conclusive in an action to recover for loss or damage a greater sum. In saying this we lay on one side, as not here involved, every question which might arise when it is shown that the carrier intentionally connives with the shipper to give him an illegal rate, thereby causing a discrimination or preference forbidden by the positive terms of the act of Congress and made punishable as a crime. * * * When there are two published rates, based upon difference in value, the legal rate automatically attaches itself to the declared or agreed value. Neither the intentional nor accidental misstatement of the applicable published rate will bind the carrier or shipper. The lawful rate is that which the carrier must exact and that which the shipper must pay."

In *Wells Fargo & Co. v. Neiman-Marcus Co., supra,* it is said:

" * * * This defense rested upon the misrepresentation as to the real value declared only in the carrier's receipt, and therefore involved the consequences of the undervaluation by which an unlawful rate had been obtained. * * * But the shipper * * * did declare and represent that the value did not exceed that sum, and did obtain a rate which he is to be assumed to have known was based upon that as the actual value."

In *Missouri, K. & T. Ry. Co. v. Harriman Bros., supra,* it is said:

"If he (the shipper) knowingly declares an undervaluation for the purpose of obtaining the lower of two published rates, he thereby obtains an advantage, and causes a discrimination forbidden and made unlawful by the first section of the Elkins Act of February 19, 1903."

Also see *Webster v. Union, etc., Co.* (D. C.) 200 Fed. 597, and *Atchison, T. & S. F. Ry. Co. v. Rodgers,* 16 N. M. 120, 113 Pac. 805, as to distinction between an arbitrary and inadequate valuation and an agreed valuation.

These cases show that the consideration which a carrier receives for giving the lower of two rates is not a limitation of liability to an undervaluation of the property, but to its conclusively fixed actual value which the carrier thus knows before the carriage is begun and the protection it thus has against claims in excess thereof.

And if the carrier, knowing of such undervaluation of the commodity carried, connives at or agrees (as the initial carrier did in the present case) to the same, and takes a release from liability in excess thereof as a part of such contract, he or any succeeding carrier will not be permitted to plead such void release as an estoppel to a recovery of the full amount of damages in an action by the shipper, sounding in tort, for the negligent loss, damage, or injury. 16 Cyc. 720, 721; also *Id.* 706-708. Neither an action nor a defense can be predicated upon such illegal provisions of the contract; but the right of the defendant to predicate his defense upon it is alone involved here.

We now come to consider a stipulation to the same effect in the other contract relied upon by the defendant as limiting its

liability to $100.  In this second contract, that is, the one made by the shipper directly with the defendant at St. Louis for the remainder of the route of transit, the liability of the carrier is limited to the declared value of $100; but the value of the four cows does not appear to have been declared or otherwise agreed, and the stipulation of release from excess liability therefor appears void. *St. Louis & S. F. R. Co. v. Ostrander,* 66 Ark. 567, 52 S. W. 435.  In the printed matter on the back of the bill of lading, it is recited that—

"ratings given herein are based upon declared valuations by shippers not exceeding the following:
"*  *  *  Each cow $30.00.  *  *  * · Agents will, in all instances, see that shipper's valuations are filled in in blank spaces left for that purpose in application attached to the contract.  *  *  * "

But the value of these cows was omitted from the blank space in the application intended for such valuation when declared or agreed upon; and we do not think the recital on the back of the contract a part of the contract itself, in view of such omission and the nature of such release stipulations.

A stipulation in a contract between a shipper and a carrier that no action for the recovery of "any claim" by virtue of such contract shall be sustainable unless commenced within six months next after the cause of action shall accrue is valid and binding, under the Carmack Amendment, cited *supra. Missouri, K. & T. Ry. Co. v. Harriman Bros., supra.*  But, as such contractual limitation was not specially pleaded nor in any manner put forward as a defense in the trial court, although appearing from one of the contracts attached as an exhibit to the defendant's answer and introduced in evidence by it, the same may not be here urged for the first time. *Betz v. Wilson,* 17 Okla. 383, 87 Pac. 844; *Texas & P. Ry. Co. v. Reeves,* 90 Tex. 499, 39 S. W. 564; *Frey v. N. Y. Cent. & H. Ry. Co.,* 114 App. Div. 747, 100 N. Y. Supp. 225; *Louisville & N. Ry. Co. v. Cunningham,* 88 Ill. App. 289; *Michalitschke v. Wells Fargo & Co.,* 118 Cal. 683, 50 Pac. 849; *Gibson v. Atlantic Coast Line Ry. Co.,* 88 S. C. 360, 70 S. E. 1030.

In an action for $1,700 as the value of a stallion, when the only evidence of value is the testimony of the owner that the stallion was worth $1,500, a verdict for "the sum of (12.00) twelve hundred" will be construed to be a verdict for $1,200, as a verdict for money only could properly have been returned, and a verdict for only $12 would be an unreasonably small amount and unauthorized.

The judgment of the trial court should, therefore, be affirmed.

By the Court: It is so ordered.