PAYNE, Director General R. R., v. PARSONS et al.

No. 11860—Opinion Filed Sept. 18, 1923.

On Petition for Rehearing Feb. 12, 1924.

1. Carriers—Delay in Live Stock Shipment —Negligence—Jury Question.

Where an unusual and extraordinary delay is shown in shipment of live stock, the burden is upon the transportation company to make a satisfactory explanation of same, and in the absence of such explanation, proof of such delay may be sufficient to constitute negligence, and is a question of fact to be determined by the jury.

2. Same—Duty to Unload for Rest and Feed.

The law does not require absolutely that the carrier unload, rest, feed, and water live stock enroute on an intrastate shipment, the federal statutes imposing such requirements not applying to intrastate shipments, and it is for the jury to determine whether the carrier should have taken such precaution or permitted the shipper to do so, in such shipments, where liability is grounded on carrier's failure to do so.

3. Evidence—Opinion Evidence — Competency of Cattleman—Damages to Cattle Shipment.

A witness who has raised, bought, sold, and handled cattle practically all of his life and resided in a country where the cattle business is one of the principal industries, is a competent witness to testify as to the value of cattle in the locality in which he operates as a cattle dealer, and to give evidence as to the damage sustained by reason of improper handling in dipping or shipping cattle, that he is the owner of and familiar with their condition immediately prior to and subsequent to the time the damage was sustained.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Wagoner County; E. A. Summers, Judge.

Action by J. H. Parsons and another against John Barton Payne, Director General of Railroads. Judgment for plaintiffs, and defendant brings error. Affirmed.

M. D. Green and H. L. Smith, for plaintiff in error.

E. L. Kirby and E. J. Broaddus, for defendants in error.

Opinion by JONES, C. The defendants in error, J. H. Parsons and Y. O. Hill, plaintiffs below, instituted this suit in the district court of Wagoner county, Okla., against the plaintiff in error, John Barton Payne, Director General of Railroads, as agent, under section 206 of the act of Congress approved February 28, 1920, defendant below,

to recover $2,990, as damages to a shipment of 327 head of cattle shipped over defendant's line of railroad from Durant, Okla., to Choteau, Okla., on the 30th day of January, 1918. Plaintiffs allege that they were the owners of 327 head of cattle and that they loaded said cars at Ringling, Okla., on the Oklahoma, New Mexico & Pacific Railroad, which transported said cattle to Ardmore, where they were transferred to the Frisco Railway Company and transported from Ardmore to Durant. That they were loaded and shipped out of Ringling, about three o'clock p. m. on January 29, 1918, and reached Durant about midnight on the 29th day of January, 1918, and there delivered to the defendant, who was operating the M., K. & T. Railway Company. That said cattle were in good condition and had been on the cars about nine hours at the time they reached Durant, and at the time they were delivered to the defendant herein. That the defendant started moving said cattle from Durant at about five o'clock a. m. on January 30, 1919, and proceeded to Atoka, where there was a delay of about three hours and other short delays along the route between Atoka and McAlester, Okla. Said shipment arrived at McAlester about two o'clock p. m. on January 30, 1918, and were there held by the defendant until about five thirty o'clock a. m. of January 31, 1918, a period of about 15 hours. That the plaintiff J. H. Parsons, who was in company with said cattle, made diligent inquiry and effort on arriving in McAlester to ascertain when the train on which said cattle were being shipped would be moved out of McAlester, and was advised they would get out about two-thirty on the same evening which they had arrived, and that later in the day the defendant having failed to move the shipment, he insisted that the cattle be unloaded, fed, and watered. That the employes of the defendant insisted that they did not have time, that they would soon be moving the cattle, and that there were no pens in McAlester suitable or sufficient in which to pen the cattle. Said cattle were moved from McAlester about five-thirty a. m., January 31, 1918, and the train transporting same reached Muskogee at about ten-thirty o'clock a. m. of the same morning and at said place the cattle were unloaded by the defendant after considerable delay, and about three o'clock p. m. of said day, said cattle had been in the possession of the defendant and in transit on its railway from midnight January 29, 1918, until three o'clock p. m., January 31, 1918, a total of 39 hours, and having been transported from Durant to Muskogee, a distance of 137 miles. That at the pens at which said cattle were placed

in Muskogee, there were cement water troughs which were filled with water and permitted to freeze, and it was necessary for plaintiffs to cut the ice out of the troughs in an endeavor to water said cattle, but on account of the condition of the troughs and the severe cold weather, the water froze immediately upon being placed in the troughs and they were unable to successfully water said cattle with the facilities at hand. That said cattle were fed and cared for in the best manner possible with the surrounding circumstances. And when said cattle were unloaded at Muskogee, there was one cow and three calves dead in the car of the defendant; that the cow was of the value of $50, and the calves $20 each. Said cattle were reloaded at Muskogee, without having been provided with any water, on Friday, February 1, 1918, at about nine o'clock a. m. and placed in transit, arriving at Wagoner on said day at about one-thirty p. m., at which point they were delayed until about five-thirty o'clock p. m. of said day, and that after leaving Wagoner they arrived at their destination, Choteau, at about seven-thirty o'clock p. m., and that when said cattle were unloaded at Choteau, there was one cow dead and one calf dead in the car of the defendant, and same were of the value of $70, and that before the cattle were removed from the stock pens at Choteau, four calves, of the value of $20 each, died in the stock pens. Plaintiff further alleges that said cattle were in good condition at the time of said shipment and at the time they were received by the defendant at Durant, and that by reason of the long delays and the failure of the defendant and its employes to permit the plaintiffs to unload and feed and water said cattle at McAlester, and by reason of holding said cattle on the cars for an unreasonable length of time, they were damaged in the sum of $10 per head, aside from damage sustained by reason of those that were dead, and plaintiff prays judgment for $2,990. To which petition the defendant filed its answer and general denial, denying the allegations contained in plaintiffs' petition, except such as may be admitted, and further answering avers that under the written contract of shipment, it was provided that the shipper should load, unload and reload the cattle into and from the cars and to feed and water same and to attend to them while in defendant's pens, or in the cars, at the expense of the shipper. That, at the time the shipment was handled, the country was engaged in war and the giving of precedence to the movement of troops and other supplies rendered it impossible to transport and deliver plain-

tiffs' shipment with a greater dispatch than was handled; that any injuries suffered by the animals comprising said shipment arose from the act of God, in that the weather was extraordinarily cold, to such an extent as could not be reasonably anticipated by the defendant; and that if any of the animals were injured, such injuries arose from carelessness and negligence on the part of the plaintiffs.

·The facts as established by the evidence in this case as to the manner of shipment, the various delays complained of, and the length of time required to make such shipment, are substantially as alleged by plaintiffs in their petition and the main point in controversy is the delay of about 15 hours at McAlester, and the fact that the cattle were not unloaded, fed, and watered at that point, and a delay of about 23 hours at Muskogee. Plaintiff in error contends that no demand was made by the plaintiff Parsons, who was in charge of the cattle, that they be unloaded, fed, and watered at McAlester, and apparently take the position that had he made demand it would have permitted him to unload, feed, and water the cattle at McAlester. On the other hand the plaintiff Parsons contends that he made inquiry of the employes of the defendant in charge of said train on arriving at McAlester as to the length of time the train would be held there and was advised that it would move by two-thirty o'clock, or within about one hour of its arrival, and that later in the afternoon the train not yet having been moved, he made further inquiry to ascertain whether or not it would be necessary to unload, feed, and water his cattle at that point, and was advised there were no pens or facilities at McAlester for the number of cattle he was shipping, and that at no time did the defendant offer to comply with his request, or give him an opportunity to unload, feed, and water his cattle, or advise him as to the length of time the shipment would be held there; that the weather was exceedingly cold, and that he was forced to permit his cattle to remain in cars throughout the entire night and that they were greatly injured by reason of the failure of the company, the defendants herein, to permit same to be unloaded, fed, and watered.

And while there is a direct conflict in the testimony as to just what occurred at McAlester, pertaining to the unloading of said cattle, we are inclined to accept the testimony of the plaintiff Parsons, as it is more nearly in accord with good reason. We can hardly conceive of a man who has handled cattle for so many years, as had the plaintiff Parsons, permitting his cattle to remain

on stock cars for a period of 12 or 15 hours, without feed or water, after they had been aboard the cars for about 24 hours and when the weather was exceedingly cold, and when he had no knowledge or authority by which he could determine when and where he would have an opportunity to unload, feed, and water.

Plaintiff in error further contends that the proof of delay such as is shown in this case is not sufficient to constitute negligence, and it devolved upon the plaintiffs in this case to prove by a preponderance of the evidence some specific act of negligence on the part of the defendant, aside from the mere fact of delay. We assume from the argument that its contention is that plaintiffs should show the cause of the delay, and that it could have been avoided. We cannot agree with this contention. We think that a delay such as is shown in this case is sufficient to shift the burden and require the defendant to make some satisfactory explanation of the various delays which would excuse the delays.

In Botts v. St. Louis & H. Ry. Co. (Mo. App.) 177 S. W. 746, on page 747, the court said:

"In the case of inanimate freight, the common carrier is an insurer, and the duty devolves upon him to deliver the goods intact at the point of destination, but there is an exception to this rule with respect to the shipment of livestock, which arises because of the inherent vice or propensities of the animals. Because of this exception it is essential to show a state of facts or circumstances from which negligent conduct may be inferred on the part of the carrier in order to affix liability upon it. But, as before said, it is not essential to show positive acts of negligence, and the circumstances attending the shipment may be such as to afford a fair inference of dereliction of duty on the carrier's part."

In St. Louis & S. F. R. Co. v. Shephard, 40 Okla. 589, 139 Pac. 833, the court, on page 835, quoting from Elliott on Railroads, volume 4, sec. 1483, said:

"Did the defendant deliver the cattle at the place of destination safely, and within a reasonable time? An unusual delay in their delivery having been proved, it devolves upon the defendant to show that the delay was from a cause for which it was not responsible."

They attempt to do this, in that they show the schedule of freight trains and the number of trains operated on its railway which might have transported plaintiffs' cattle, and contend that the cattle were transported with reasonable dispatch, and that they

were moved out of the various points at which they were stopped along defendant's railway by the first train moving in the direction of their destination, and apparently take the position that this is all that is required of the transportation company. This explanation as to the number of trains and the manner and time which they run might be entitled to consideration and might be a satisfactory explanation of the delay, had the defendant advised the plaintiffs of the schedule and movement of their trains and of the length of time which they would be delayed at the various points, and had given the plaintiffs an opportunity, with sufficient facilities, to unload, feed, and water their cattle. The fact that the shipper is charged, under the contract, with caring for his cattle, gives him no information or knowledge as to the manner of operating the trains of the defendant railway company, nor the time which trains would move at the various points along its line, nor does he have any knowledge as to the length of time that a shipment may be held or delayed at any particular point, and it is clearly the imperative duty of the defendant company and its employes to so advise shippers, and it is hardly reasonable to expect one to believe that had the plaintiffs in this case, on the arrival of the shipment of cattle at McAlester, been advised that the cattle would not be moved out of McAlester for a period of 12 to 15 hours, that they would have permitted them of their own volition and of their own free will and accord, to remain on the cars. Evidently they were not so advised, and we think that such conduct on the part of the employes of the defendant clearly constitutes negligence.

Plaintiff in error pleads as a defense and offered some evidence relative to the condition of the weather and takes the position that there was unprecedented storm and excessive cold weather and that owing to the season of the year, the plaintiffs necessarily shipped the cattle with the knowledge of the fact that they might encounter exceedingly cold weather, and consequently assumed the risk of injury to their cattle by reason of such conditions. It is true that the shipper does assume the risk of all necessary exposure and is charged with knowledge concerning same, but likewise the defendant is charged with like knowledge of the probable conditions of the weather and is liable for all unnecessary exposure occasioned by its negligent delays.

In the case of Texas Pacific R. Co. v. Smissen et al. (Tex.) 73 S. W. 42, the court said:

"In this case Smissen is presumed to have known his cattle would probably be exposed to cold weather en route to Illinois at the season of the year his shipment was made, and to have assumed the risk of all necessary exposure; but the company was chargeable with like knowledge of the probable condition of the weather, and is liable for all its negligent delays."

Idem, syl. 3: "Where a railroad company transporting cattle from Texas to Illinois unnecessarily delayed them on the route so that they were exposed to severe cold and snow in Missouri, such weather in December was not an 'act of God' which excused the carrier from liability."

We think this authority states the correct rule and that in view of the weather conditions, it was incumbent upon the defendent railway company to exercise such diligence and precaution as was commensurate with the unusual conditions of the weather, so far as it was within its power to do so.

Plaintiff in error, defendant below, contends that the verdict rendered by the jury was excessive. It admits that possibly, by reason of the death of the cattle during the shipment and immediately thereafter, if liable at all, the jury might have properly rendered a verdict for as much as $600, but contends it is unable to see how the remaining $1,400 could be justly assessed against it under the facts in this case. And further complains that the evidence of the witnesses Parsons and Parker was improperly submitted to the jury for the reason that said witnesses were not properly qualified to testify as to the value of the cattle and to the injuries sustained by reason of the delays and conditions complained of. The evidence shows that the witness Parsons had been engaged in the cattle business for 15 or 20 years and had frequently shipped cattle, and that the witness Parker had been engaged in the stock raising business for a period of about 40 years, and we think such disclosures are generally recognized by the courts in this day as being abundantly sufficient as a qualification for the witness to testify to such matters as are here in controversy. It is a matter of universal knowledge, of which all courts take cognizance, that men engaged in any avocation or profession, or walk of life, and who have been so engaged practically all their lives, necessarily acquire such knowledge and information concerning the things with which they continually deal as to enable them to give competent testimony, and such testimony is admissible in the courts of this country. And while it may not be the highest character of evidence and may not be absolutely correct and exact in its nature, it is unquestionably sufficient upon which to base a judgment of the court, in the absence of any contradictory evidence to refute it.

In St. Louis & S. F. R. Co. v. Mounts, 44 Okla. 359, 144 Pac. 1036, the court, on page 364, lays down the same rule as follows:

"A farmer, 70 years old, who has bought, sold and handled horses practically all his life, and who testifies that he knows the market value of his stallion, is prima facie qualified to testify as to the value of the same; and it was therefore not error to permit John Cassidy to so testify in this case." Idem:

"It appearing that Mr. Cassidy at the time lived at (or within five miles of) Frederick, which was the place of destination of the stallion when negligently killed, and the place where the trial was held, it will be presumed, in the absence of anything to the contrary, that his testimony given in such trial at that place as to the value of the stallion referred to its value at such place, and there was therefore no error in this respect. Lachner Bros. v. Adams Express Co., 72 Mo. App. 13."

The evidence in this case, according to the witnesses Parsons and Parker, was to the effect that the cattle were damaged from $10 to $15 per head. The damages assessed by the jury, according to their verdict, was about $5 per head, and we think that the evidence submitted was clearly admissible, and together with other facts proven, fully justified the finding of the jury.

There are various assignments of error urged, but we think the errors complained of, that we have heretofore discussed, are decisive of the rights of the parties in this case, and that the other errors complained of are immaterial. Plaintiff in error insists that it was entitled to an instructed verdict, but under our Constitution and laws, the question of negligence is one of fact to be submitted to the jury, and we think the proof of delays and the fact that the shipment was in transit for a period of about 60 hours from Durant to Choteau, a distance of about 169 miles, and was in the possession of the defendant for about 70 hours, which would be at the rate of less than three miles per hour, is too slow a schedule to be justified, in the absence of satisfactory explanation, and the facts as established in this case clearly justify the jury in finding the defendant to be negligent in the operation of its train and the handling of this shipment, and that the instructions given by the court, which are complained of, fairly submit the issues and are a correct interpretation of the law governing same, and finding no material errors, we recommend that the judgment be affirmed.

By the Court: It is so ordered.

On Rehearing.

PER CURIAM. This case was assigned to Division No. 3 of the Commission, and said division prepared and sent down an opinion to the court on September 18, 1923, and said opinion was approved by the court, and thereafter the plaintiff in error filed a petition for rehearing and set up, among other grounds, that the plaintiff in error at the time of filing the record of the case in this court filed a written request for oral argument of the case. This request seems to have been overlooked by the clerk and no notice was sent out nor was the case set for oral argument, and Division No. 3 recommended that the case be set down for oral argument before some other Division of the Commission, and the parties permitted to argue it orally. The case was reassigned to Division No. 1 of the Commission and it set the case down for oral argument and the same was argued by the attorneys for the respective parties. Said Division No. 1 has reported as follows:

"We have read the briefs in the case, both on the merits and on the petition for rehearing and have heard the oral arguments. We have also read the testimony contained in the record, and have examined the opinion prepared by Judge Jones of Commission No. 3, and have reached the conclusion that the decision of Division No. 3 is sound, and that the opinion prepared by Judge Jones is sustained by the record in the case, as well as by the law of the case; and we recommend that the opinion prepared by Judge Jones, a copy of which is hereto atached, be adopted as the opinion of the court."