HERBERT J. UNDERWOOD, APPELLEE, v. CHICAGO & NORTH-WESTERN RAILWAY COMPANY, APPELLANT.*

FILED SEPTEMBER 22, 1916. No. 18949.

1. Appeal: REVIEW. A cause will be determined upon appeal upon the same theory upon which it was tried in the district court, and, where both parties have tried the case as if a certain, essential element was proved, this court will not reverse the judgment for the lack of evidence of such fact.

*See opinion, p. 507, *post.*

2. **Evidence:** Injuries to Live Stock: Proof. In order to recover damages for an alleged shrinkage in the weight of cattle, alleged to have been caused by delay in their transportation on the part of a common carrier, the fact that there was a shrinkage of weight must be proved by competent evidence, and cannot be established by mere opinion evidence.

Appeal from the district court for Douglas county: Charles Leslie, Judge. *Affirmed on condition.*

*A. A. McLaughlin, Wymer Dressler* and *Lyle Hubbard,* for appellant.

*Sutton, McKenzie, Cox & Harris, contra.*

Letton, J.

Action to recover damages for delay in the shipment of cattle. The plaintiff on the evening of June 23, 1913, loaded six cars of cattle at the station of Dumfries, Iowa, on the line of the Wabash railway, for transportation over that line and the line of the defendant to Chicago. The cars were transported to Council Bluffs on the line of the initial carrier, and there delivered to defendant for transportation to Chicago. Two cars reached Chicago in time for the market on June 25. The cattle in four cars, consisting of 74 head, were unloaded and fed by defendant at Clinton, Iowa, and did not reach Chicago in time for the market on June 25, but were sold the next day. Plaintiff claims damages for extra shrinkage upon these cattle, for a decline in the market price, and for the feed bill at Clinton which he was compelled to pay, amounting in all to $374.36. The defendant admitted that it received the cattle for shipment, denied any negligence or delay in their carriage, and pleaded a contract that no claim for damages should be allowed unless presented within ten days. The jury returned a verdict for the full amount claimed, and from a judgment thereon defendant appeals.

There is no proof that the claim was not presented within the time limit. Furthermore, defendant received the claim without objection on this score, and offered to pay

a part of the plaintiff's claim. The evidence shows that no delay occurred until after the train reached Boone, Iowa. The manner in which the two cars which reached Chicago in time for the first day's market were entrained or hauled is not clearly shown, but it is fairly inferable that the six cars were in the same train as far as Boone, and that at that station the shipment was divided. The four cars reached Clinton an hour and a half later than the scheduled time of the train, and, since it took nine hours further time to cover the distance to Chicago, the local inspector for the defendant, believing that to send the cattle through without unloading would violate the United States statute (34 U. S. St. at Large, ch. 3594, p. 607), providing that cattle should not be held in cars more than 28 hours without food or water, unless by request of the owner, when the time may be extended to 36 hours, ordered them unloaded and fed. This delay caused their arrival too late for the market on Wednesday.

Defendant now contends that the 28-hour provision of this statute applies, and that a through shipment could not have been made within that time. There was no direct evidence of a request by plaintiff for confinement of the cattle in the cars for 36 hours. The instructions requested by defendant and some of the questions propounded its witnesses show that the case was tried by both parties on the theory that such a request had been made. This court will take the same position on appeal, and hence there is no merit in this contention.

No good reason has been shown by defendant why two cars went through and four cars were delayed. Plaintiff lost by the falling of the market, and was compelled to pay a feed bill of $24 at Clinton. He also claims a loss of 30 pounds a head for extra shrinkage caused by the delay. The evidence on this point is vague and unsatisfactory. Plaintiff testifies that the cattle were not weighed when shipped, but he thought they would weigh more than 1,400 pounds. It is stipulated that the selling weight was 103,620 pounds, which is an average weight of a little over

1,400 pounds. Several stock shippers testified that the extra shrinkage of cattle when held over one day is from 30 to 50 pounds a head, and one testified that on a through shipment 1,400-pound steers will usually fill from 50 to 70 pounds a head. The net weight of the cattle before filling was shown to be 98,880 pounds; deducting this from the conceded selling weight, it appears that the cattle filled a little over 65 pounds a head on an average. The statement is made in a letter offered in evidence by plaintiff that the cattle in the other two cars filled an average of 57 pounds each. The jury evidently allowed a shrinkage of 30 pounds a head on the four cars, since in their verdict they adopted the plaintiff's estimate of loss exactly. The proof does not establish the item of shrinkage, but does support the other claims.

The judgment is therefore reversed, unless plaintiff within 40 days remit $194.93 of the judgment, being the amount allowed for shrinkage.

AFFIRMED ON CONDITION.

FAWCETT, J., not sitting.