(107 App. Div. 374.)

JOHNSON v. MISSOURI, K. & T. RY. CO. OF TEXAS.

(Supreme Court, Appellate Division, Second Department. August 31, 1905.)

1. CARRIERS—CONNECTING LINES—CONTRACT OF CARRIAGE.

    The contract contained in a bill of lading, headed with the name of defendant M., K. & T. Ry. Co. of Texas, immediately following which are written in the words "and Wab., Hoosac Tunnel, and Cunard Line," reciting receipt of goods in Texas "to be carried to Boston, and thence by Cunard Line to Liverpool," concluding, "In witness whereof, the agent, signing on behalf of the said M. K. & T. Ry. Co. of Texas and of said Ocean Steamship Company, * * * severally, and not jointly," and signed by the agent, with the words "on behalf of carriers severally, but not jointly," is a contract of defendant to carry to Boston by way of the Wabash and Hoosac Tunnel lines beyond its terminus, and of the steamship company to carry from Boston to Liverpool.

    [Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 760–762, 780, 781.]

2. SAME—CONDITION AS TO DAMAGES.

    The words "loss or damage," in the provision in the contract of defendant railway company to carry goods to Boston by its own and specified connecting lines, and of a steamship company to carry the goods from Boston to Liverpool: "No carrier shall be liable for loss or damage not occurring on its road or its portion of the through route, nor after said property is ready for delivery to the next carrier. * * * The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at place and time of shipment"—and according to which claims for loss or damage must be made within a certain time after delivery or time therefor, are limited to loss of or injury to the property, and do not include damages for loss of a market because of delay in transportation.

Submitted controversy on an agreed statement of facts between Charles A. Johnson and the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, RICH, and MILLER, JJ.

Charles S. Haight (Everett P. Wheeler, on the brief), for plaintiff.

W. Kintzing Post (Herbert L. Satterlee, on the brief), for defendant.

MILLER, J.   This is a submitted controversy, in which the plaintiff seeks to recover as damages the loss of a market caused by delay in the transportation of two consignments of cotton, one from Greenville, Tex., and one from Dallas, Tex., to Liverpool, England. It appears that the cotton was delivered to the defendant for transportation by the plaintiff's assignors at said places; that the agreement therefor was expressed in bills of lading delivered by the defendant to said shipper; that the defendant transported the cotton without delay over its own line, and delivered it in good season to the next connecting road, but that for some cause which is not stated in the statement of agreed facts a delay occurred between said point of delivery and the port of Boston, and likewise between said port of Boston and Liverpool, for both of which delays damages resulted by reason of a falling market at Liverpool, for which the plaintiff claims the defendant is responsible under its contract.   The bill of lading, so far as material, is as follows:

"The Missouri, Kansas & Texas Railway Company of Texas, and Wab., Hoosac Tunnel, and Cunard Line.

"Received, at Greenville, Tex., from Dorrance, Cairns & Co. the following property, in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated below:

"Consignee and Destination, Order, Liverpool, Eng.
"Party to be notified, Cunningham & Hinshaw."

Then follows a description of the articles by marks, numbers, number of bales, and weight,

—"to be carried to the port (A) of Boston, Mass., and thence by Cunard Line to the port (B) Liverpool, Eng. (or so near thereto as ship may safely get, with liberty to call at any usual port of call), and to be there delivered as above consigned, or to another carrier on the route to destination if consigned beyond said port (B) upon payment immediately on discharge of the property, of the freight thereon, at the rate from Greenville, Tex., to Liverpool, Eng., of ninety-five cents, United States gold currency, per one hundred pounds gross weight, and advanced charges."

At the foot of the bill of lading 31 conditions are stated in fine print, in three classifications:   First, with respect to service until delivery at the port of Boston; second, with respect to service after delivery at the port of Boston and until delivery at the port of Liverpool; and third, after delivery at the port of Liverpool.   Under the first classification the conditions stated, so far as material, are as follows:

"(1) No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto by causes beyond its control, or by floods or by fire, or by quarantine, or by riots, strikes, or stoppage of labor, or by leakage, breakage, chafing, loss in weight, changes in weather, heat, frost, wet, or decay, or from any cause if it be necessary or is usual to carry such property upon open cars.

"(2) No carrier is bound to carry said property by any particular train or vessel, or in time for any particular market, or otherwise than with as reasonable dispatch as its general business will permit. Every carrier shall have the right, in case of necessity, to forward said property by any railroad or route between the point of shipment and the point to which the rate is given.

"(3)No carrier shall be liable for loss or damage not occurring on its own road or its portion of the through route, nor after said property is ready for delivery to the next carrier or to consignee. The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and time of shipment under this bill of lading, unless a lower value has been agreed upon or is determined by the classification upon which the rate is based, in either of which events such lower value shall be the maximum price to govern such computation. Claims for loss or damage must be made in writing to the agent at point of delivery promptly after arrival of the property, and if delayed for more than 30 days after the delivery of the property, or after due time for the delivery thereof, no carrier hereunder shall be liable in any event."

"(11) No carrier shall be liable for delay, nor in any other respect than as warehousemen, while the said property awaits further conveyance, and in case the whole or any part of the property specified herein be prevented by any cause from going from said port in the first steamer of the ocean line above stated leaving after the arrival of such property at said port, the carrier hereunder then in possession is at liberty to forward said property by succeeding steamer of said line, or, if deemed necessary, by any other steamer.

"(12) This contract is executed and accomplished, and all liability hereunder terminates, on the delivery of the said property to the steamship, her master, agent, or servants, or to the steamship company, or on the steamship pier at the said port, and the inland freight charges shall be a first lien, due and payable by the steamship company."

The instrument was executed in the following form:

"In witness whereof, the agent, signing on behalf of the said the Missouri, Kansas & Texas Railway Company of Texas, and of the said ocean steamship company, or ocean steamer and her owner, severally, and not jointly, hath affirmed to two bills of lading, all of this tenor and date; one of which bills being accomplished, the others to stand void.

"Dated at Greenville, Tex., this 27th day of Dec. 1900.

"J. Waller, G. F. Agent,
"On Behalf of Carriers Severally, but not Jointly."

It is stipulated that the damages occasioned by delay in transportation to the port of Boston were $685, and that the damages occasioned by the delay over the entire route were $969.23. Certain propositions respecting the obligation of common carriers are well settled by the decisions of the federal courts and of this and many other states, and may be stated without the citation of authority. In the absence of a special contract a carrier who receives goods for shipment to a point beyond his own line is only obliged to transport over his own line and deliver to the next connecting carrier, and is not responsible for anything occurring after such delivery. No special contract will be inferred from the mere fact that the goods are shipped or marked to a destination beyond the line of the

initial carrier. If, however, a special contract is made to carry or transport to a given point (which contract is usually expressed in the bill of lading), then the initial carrier receiving the goods and making such contract is liable as a common carrier for the transportation over the entire route to such point, and connecting carriers become his agents for the performance of the contract.

The first question to be determined in this case, therefore, is: What did the defendant engage to do? It is to be observed that the contract upon its face is the contract of the defendant and the Cunard Line Steamship Company, as it is executed by the agent of the defendant on behalf of said defendant and steamship company severally. It does not purport in any sense to be the contract of the Wabash and the Hoosac Tunnel, the connecting roads between the terminus of the defendant's line and the port of Boston, and it is plain that the purpose of writing in the words "Wab., Hoosac Tunnel," after the name of the defendant at the top of the bill of lading, was merely for the purpose of indicating the connecting lines over which it was proposed to transport the cotton, as there were several different lines by which the defendant could have transported it if it so desired; but neither the Wabash nor the Hoosac Tunnel were parties to the contract, nor in any way bound by it. The contract of each arose only after it had accepted the goods for transportation over its own line. It being clear, therefore, that the contract, whatever it was, was the contract of the defendant and the steamship company, the question to be determined is: What was contracted to be done? This is expressed in the phrase:

"To be carried to the port (A) of Boston, Mass., and thence by Cunard Line to the port (B) Liverpool, Eng."

There is no ambiguity about this expression. It is not a contract to forward merely. It is not a contract to carry to the terminus of the defendant's line and there deliver to the next connecting carrier. This contract was prepared by the defendant and delivered to the plaintiff's assignors, and if there were any ambiguity about it such ambiguity or uncertainty would have to be resolved against the defendant, within the rule that the language of an instrument is to be construed against the person who proposes it rather than against the person who is invited to accept it. Gillet v. Bank of America, 160 N. Y. 549, 555, 55 N. E. 292. The defendant was responsible for the language used, and, having expressly agreed to carry to a given point, must be held liable as a common carrier for the transportation of the goods to such point, except so far as its liability is clearly limited by the conditions which are a part of the instrument. Condition 12, supra, in respect to the service until delivery at the port of Boston, makes it clear that the obligation of the defendant terminated upon the delivery of the property to the steamship company at said port, and a reasonable construction of the contract requires us to hold that the defendant and the Cunard Line severally agreed, the one to carry the cotton to the port of Boston and deliver to the latter, and the latter to carry to the port of Liverpool and

deliver to the consignee or to another connecting carrier if consigned beyond said port.

This brings us to the meaning of the words "loss or damage," as used in the third condition quoted supra, because it is clear that if such words include injury to the shipper arising from delay, as distinct from loss of or injury to the property itself, the defendant has restricted its liability to its own line or its portion of the through route. The defendant contends that inasmuch as it is sought to be made liable for the acts of others, for which in the absence of special contract it would not be liable at common law, the conditions restricting such liability contained in such special contract should be construed liberally in its favor. It may be that this contract should not be construed as strictly against the carrier as the courts of this state have construed contracts made by carriers limiting their common-law liability, for the reason that, but for the contract, the defendant would not be liable for the delay in this case, although the distinction between the liability imposed by this contract and any other contract of carriage is finely drawn. The obligation in each case arises from the contract, express or implied, to carry. In each case the liability as a common carrier is assumed upon the making of the contract, and is a common-law liability usually not expressed in the contract; and, if a carrier expressly contract to carry to a given point, it would seem to be quite immaterial whether the route embraced other connecting lines or was confined to its own line. But, be that as it may, the defendant is responsible for the language used in this contract, and is at least subject to the rule, declared in Gillet v. Bank of America, supra, that any uncertainty or ambiguity as to the meaning of the agreement must be resolved in favor of the plaintiff, and it is quite clear that by subdivision 3, supra, the defendant did not restrict its liability for injury to the shipper caused by delay.

Loss or damage to the property, and injury to the shipper resulting from loss of market, are quite distinct. In the first condition stated supra, the defendant provided against all liability for loss of or damage to the property resulting from the causes stated. The use of the words "thereof" and "thereto" clearly limiting the application of the words to the property itself, although the words "thereof" and "thereto" are not repeated in the third subdivision supra, it is quite clear that the words "loss or damage" are used in the same sense. The language is:

"For loss or damage not occurring on its own road or its portion of the through route, nor after said property is ready for delivery to the next carrier."

.Manifestly the only loss or damage which would occur on its own road would be loss of or damage to the property itself. The loss or damage resulting from a falling market occurs after the property has reached its destination. In order to give the condition the effect claimed by the defendant, it is necessary to interpolate after the word "damage" the words "from causes," so that it should read:

"No carrier shall be liable for loss or damage from causes not occurring on its own road."

But it is contended that in any view the words "nor after said property is ready for delivery," etc., clearly restrict the defendant's liability to the defendant's own line. If the words "loss or damage" are held to include injury to the shipper from loss of market, then if the phrase quoted is given its literal meaning it would provide against all liability for such loss or damage, even though occasioned by a cause occurring on the defendant's road, because, although the cause occurs on the defendant's road, the loss or damage does not occur until after the property has left the defendant's road. These observations make it clear that a reasonable construction must be adopted, and the meaning of the words "loss or damage" as thus used is clearly indicated by the following sentence:

"The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and time of shipment," etc.

For it is clear that the only loss or damage, in determining which the value of the property at the place and time of shipment could be a factor, is loss of or damage to the property itself. In the case of injury to the shipper arising from a falling market the damage is determined by computing the difference between the price at which the goods actually were sold and the price at which they could have been sold had the contract been performed. The value of the property at the place and time of shipment does not enter into the problem in any way.

There is another view which tends to support the contention of the plaintiff. By this contract two carriers engaged to transport the property to Liverpool, each being responsible for the transportation over a certain portion of the route, the defendant from the point of shipment to the port of Boston, and the steamship company from Boston to Liverpool, and, as we have said, by this contract the connecting roads between the terminus of the defendant's line and Boston were its agents, and the word "carrier," as used in the condition under consideration, can reasonably be construed as referring to the contracting carriers, especially in view of the expression "occurring on its own road or its portion of the through route. The defendant's portion of the through route was from Greenville, Tex., to Boston, Mass., and in this view it becomes immaterial whether the words "loss or damage" are limited to loss of or injury of the property. We prefer, however, to rest our decision upon the ground that the words "loss or damage," when construed in reference to the context, do not include the loss which the plaintiff seeks to recover in this action.

The defendant contends that claim for loss or damage was not "made in writing to the agent at point of delivery promptly after arrival of the property, or after due time for the delivery thereof." It appears that due time for the delivery of the cotton at Liverpool was February 14th. It in fact arrived in different lots, as follows: 50 bales on February 22d, 51 bales on March 5th, and 99 bales on May 1st. On the 26th of April the consignee of the cotton at Liverpool notified the Cunard Steamship Company by letter that the

cotton was overdue and that the delay meant serious loss, and on the 19th of June made a formal claim in writing for the amount of the damages claimed to have been sustained. It is unnecessary to determine whether this was a sufficient compliance with the terms of the contract, because the words "loss or damage," as used in the portion of subdivision 3 relating to notice of a claim, must be construed as used in the same sense as the words "loss or damage" in the first sentence of the paragraph, and, as we have held that said words do not include the damage suffered in this case, there is no provision in the contract requiring notice thereof to be given. The reason for requiring prompt notice of loss of or damage to the property itself is apparent, for in such case it is obvious that prompt notice is required in order to enable the defendant to investigate the extent of the injury and the facts relative thereto; but in the case of a claim for damage to the shipper resulting from loss of market occasioned by delay, the carrier does not need to be promptly notified in order to ascertain the facts. The market quotations are preserved and can be ascertained at any time, and records must be kept by the different lines over which the property is transported, so that it should be possible at any time to ascertain the time of receipt by any given carrier and the delivery by it to the next succeeding carrier.

For these reasons the plaintiff should have judgment in accordance with the stipulation for the sum of $685, with interest from February 14, 1901, without costs. All concur.