WILLIAM H. McELWAIN, APPELLEE, v. UNION PACIFIC RAIL-
ROAD COMPANY, APPELLANT.

FILED JULY 10, 1917. No. 19231.

1. **Carriers:** TRANSPORTATION OF LIVE STOCK: CLAIM FOR DAMAGES: NO-
TICE. Where the bill of lading provides that, as a condition pre-
cedent to the right to recover "damages for loss of or injury to"
live stock, the shipper shall give notice in writing of his claim
therefor, notice is not required where the claim is solely for dam-
ages sustained by the loss of a favorable market and for shrinkage
in weight and expense of feeding at destination while awaiting the
next market; such damages being caused by reason of delay in
transportation.

2. ———: ———: DELAY: BURDEN OF PROOF. Where there is proof
that an unreasonable time was consumed in transporting the ship-
ment, the burden is on the carrier to prove that the delay was not
caused by its negligence, though the owner of the live stock ac-
companied the shipment. *Cleve v. Chicago, B. & Q. R. Co.*, 77 Neb.
166, distinguished.

3. **Evidence:** OPINION OF WITNESS: SHRINKAGE OF LIVE STOCK. Opin-
ion testimony of qualified witnesses that cattle held at destina-
tion two days before selling will probably shrink in weight 3 per
cent. may be admissible to prove a claim for shrinkage after ar-
rival, where the weight of the cattle on arrival at destination and
before watering and feeding and their selling weight tend to show
that the cattle did not "fill" the usual amount. *Underwood v.
Chicago & N. W. R. Co.*, 100 Neb. 275, distinguished.

APPEAL from the district court for Merrick county:
FREDERICK W. BUTTON, JUDGE. *Affirmed.*

*Edson Rich, A. G. Ellick* and *Martin & Bockes*, for ap-
pellant.

*Elmer E. Ross* and *Prince & Prince*, contra.

LETTON, J.

Plaintiff recovered judgment for damages caused by de-
lay in the transportation of live stock, and defendant
appeals.

Defendant contends that the instructions ignore the
following provision of the bill of lading: "The said ship-

per further agrees that, as a condition precedent to his right to recover any damages for loss of, or injury to, any of said stock, he will give notice in writing of his claim therefor to some officer of said carriers, or to their nearest station agent, before said stock has been removed from said place of destination, and before such stock has been mingled with other stock, and present a formal statement of his claim duly verified to said carriers within 60 days thereafter."

Plaintiff concedes the validity of this provision, but contends that it is not applicable to claims for damages not accruing during transportation. In the petition it is alleged that, if there had been no delay in the transportation, the cattle would have arrived in Chicago in time for the market of Monday, December 2; that owing to the negligence of defendant they arrived there too late for the Monday market; that there was no satisfactory market Tuesday for the class of cattle which plaintiff had shipped, and the cattle were sold Wednesday for less than plaintiff would have received had they arrived Monday. He claims damages for the loss of the Monday market, for shrinkage in the cattle while in the stock-yards from Monday afternoon until Wednesday, and for feeding expense for the two days.

Provisions in a bill of lading, in cases where there is a reasonable doubt as to their meaning, are to be construed most strongly against the carrier. 10 C. J. 181, 194. Was plaintiff required by the provisions of the bill of lading to give notice of his claim? The following statement of the law is pertinent to this inquiry:

"If because of wrongful delay the shipment sustains physical injury, and in consequence a depreciation in value, a provision in the contract of shipment requiring notice of claim for damages for loss or injury to the shipment is applicable. * * * On the other hand, it is very generally held that a stipulation for notice of this character applies only to a loss of, or physical injury to, a shipment of dead freight, or to injury to a shipment of

live stock caused by delay and consequent depreciation in
value. In other words, where the shipper suffers special
damages because of wrongful delay, no compliance with
the stipulation is necessary to entitle him to recover for
special damages, and the reason is that the notice would
be useless in determining the amount of such loss. In con-
formity with this principle, it has uniformly been held
that a stipulation that notice of damages should be a con-
dition precedent to recovery for any injury to the ship--
ment during transportation has no application to damages
caused by the loss of market, to loss resulting from a de-
cline in the market value of the shipment, or to the ex-
pense of feeding stock, resulting from delay in transporta-
tion. And no notice is necessary to authorize the recovery
of damages from shrinkage resulting from the holding of
the cattle after transportation was completed, due to the
loss of market. * * * Nevertheless, it has been held
that, where the provision requiring notice is not confined
to loss of, or injury to, live stock covered by the contract,
but expressly includes damages for delay, it must be con-
strued as including a loss sustained by a decline in the
market, and that a provision in a bill of lading to the ef-
fect that claims for loss, damage, or delay must be made in
order to render the carrier liable was not limited to claims
for damages to the goods shipped." 10 C. J. 334.

Plaintiff's claim was not a claim for "damages for loss
of, or injury to," the stock, and notice was not required by
the bill of lading. *Gault v. Atchison, T. & S. F. R. Co.*, 92
Kan. 464; *Elliott v. Chicago, M. & St. P. R. Co.*, 38 S.
Dak. 371.

It is also contended that instructions relating to the
burden of proof are erroneous. After instructing that, in
order to recover, plaintiff must prove by a perponderance
of the evidence that "an unreasonable delay in the trans-
portation of said cattle occurred on account of the negli-
gence and carelessness of defendant or connecting carriers,
and without fault of the plaintiff," the court also in-
structed that, "when the evidence discloses that an un-

reasonable length of time has been consumed in the transportation of live stock, and the carrier seeks to justify the same, then as to such justification the burden of proof devolves upon it to show by a preponderance of the evidence that said delay in transportation was not caused by its own carelessness or negligence." Defendant argues that, since the owner accompanied the shipment, the burden is on him to prove that the loss complained of was occasioned by the carrier's negligence. *Cleve v. Chicago, B. & Q. R. Co.*, 77 Neb. 166. In the case cited it was held that, "where by contract the shipper accompanies his live stock with tenders or caretakers, no presumption of negligence on the part of the carrier arises merely from the proof of the fact that loss or injury has attended the shipment, but the burden is on the shipper to show that the loss, if any, sustained was occasioned by the negligence of the carrier," and a judgment against the carrier was reversed, since there was no competent evidence tending to show that more time was consumed in transporting the shipment than was reasonably necessary. The instruction assailed does not conflict with the rule announced in the foregoing case. Where the evidence shows that an unreasonable time was consumed in transporting the shipment, the carrier will be liable for resulting damages, whether the shipper did or did not accompany the shipment, unless it is shown that the delay was within the exceptions qualifying the carrier's general liability, the cause of the delay being a matter peculiarly within the knowledge of the carrier.

It is contended that the court erred in admitting opinion evidence to prove alleged shrinkage in weight of the cattle while being held at the stock-yards in Chicago. The aggregate weight of the cattle when weighed on the railroad scales on their arrival at Chicago and before watering was 255,200 pounds. Their selling weight Wednesday morning was 256,410 pounds. Witnesses for plaintiff, experienced in the live stock business, testified that the cattle ought to "fill" 3 to 4 per cent. when watered and sold on their arrival. A witness, called by the defendant, who

had been engaged in the live stock business in Chicago for
nearly thirty years, on cross-examination and without ob-
jection testified to the same effect.   There was a conflict
in the evidence as to whether cattle held over from Mon-
day to Wednesday under circumstances such as were in
evidence would shrink in weight, but the contention of
plaintiff is supported by sufficient competent evidence
that such cattle would shrink about 3 per cent. in weight.
In other words, while the actual weight of the cattle on
the cars at destination and their weight when sold two
days later might be the same, if properly filled and taken
care of, the cattle should weigh 3 per cent. more than
when on the cars, the weight when sold in this case being
6,446 pounds less than it would have been if the cattle had
filled 3 per cent. on arrival.   There is no proof as to the
amount of feed furnished during this delay, and it is not
contended it was insufficient.

Defendant cites *Underwood v. Chicago & N. W. R. Co.,*
100 Neb. 275, in which it was stated in the syllabus: "The
fact that there was a shrinkage of weight must be proved
by competent evidence, and cannot be established by mere
opinion evidence."   This was correct as applied to the
facts in that case, but is not correct as a general rule.   In
that case the weight of the cattle at the point of origin and
destination was the same.   The selling weight showed that
the cattle had filled a little over 65 pounds a head on an
average, which met the requirements indicated by the testi-
mony on behalf of plaintiff.   Under such evidence, opinion
evidence that cattle when held over one day would shrink
30 pounds a head was insufficient to support a finding of
such a shrinkage, since the other evidence conclusively
showed that there had been no shrinkage.   In the present
case, since the cattle at destination did not "fill" to the
usual amount, it was proper to show by stockmen that
cattle being held for two days at destination would pro-
bably shrink 3 per cent.

The judgment of the district court is

AFFIRMED.

SEDGWICK, J., not sitting.

HAMER, J., dissenting.

I am unable to agree with the views expressed in the majority opinion. In the first paragraph of the syllabus it is held: "Where the bill of lading provides that as a condition precedent to the right to recover 'damages for loss of or injury to' live stock, the shipper shall give notice in writing of his claim therefor, notice is not required where the claim is solely for damages sustained by the loss of a favorable market and for shrinkage in weight and expense of feeding at destination while awaiting the next market, such damages being caused by reason of delay in transportation." The views of the court as expressed in the body of the opinion supports the syllabus. The provision in the bill of lading reads: "The said shipper further agrees that, as a condition precedent to his right to recover any damages for loss of, or injury to, any of said stock, he will give notice in writing of his claim therefor to some officer of said carriers, or to their nearest station agent, before said stock has been removed from said place of destination, and before such stock has been mingled with other stock, and present a formal statement of his claim duly verified to said carriers within 60 days thereafter." It might be all right to hold that notice is not required where the claim is solely for damages sustained by the loss of a favorable market and expense of feeding at the destination, provided the same are caused by an unnecessary delay in transportation. The weight of the cattle immediately upon their arrival at their destination and before eating, drinking and filling to their usual condition, as nearly as may be, would not be their proper weight. The opinion testimony concerning what the cattle would shrink in two days further complicates the matter. There is no proper starting point shown by the evidence in the case. The testimony of the witnesses as to what might be the shrinkage of the cattle in two days gets nowhere. It is a projected view having no relation to the case and no

connection with it. Undoubtedly there was shrinkage during the transportation of the cattle and it was that shrinkage to which the bill of lading refers, but the defendant company could not properly be held liable for that; and that is mixed with the estimated shrinkage of two days, as related by the opinion witnesses, and both kinds of shrinkage are together, that on the trip and that after the cattle arrived at the end of the trip, and therefore they are inseparable, and each by itself is unascertainable. This must have been prejudicial to the interests of the defendant at the time of the trial.

It is without doubt dangerous to the due administration of justice to make claims for damages because of other things than injury to the live stock shipped and then to consider the whole together. Besides no satisfactory reason is offered for not giving the notice. When the cattle arrived at their destination the shrinkage of the trip had occurred and it was then ready to be investigated. The notice should then have been given before the accumulation of further acts to obscure the view of the subject. The weight of the cattle immediately upon their arrival at Chicago and before being fed or watered was 255,200 pounds, and when sold on Wednesday morning afterwards they weighed 256,410 pounds. The opinion witnesses were brought in to show that the weight of the cattle when sold was 6,465 pounds less than it would have been if the cattle had been properly cared for and had been properly filled on arrival. The problem presented was incapable of exact demonstration, and no one may know that this testimony enabled the court to reach a correct result. It is conceded in the majority opinion that the case cited by the defendant railroad company, *Underwood v. Chicago & N. W. R. Co.*, 100 Neb. 275, was right in that case "but is not strictly correct as a general rule." I think it is preferable to look for a *general rule.* In that case the "fill" is claimed to have amounted on the average to 65 pounds to each steer, and in that case the weight of the cattle at the destination and "point of origin" was the

same, and when the court saw there had been no shrinkage the opinion evidence that the cattle when held over one day would shrink 30 pounds to the head was held insufficient to support a finding of shrinkage in the face of competent evidence that there had been no shrinkage.