United Merchants and Manufacturers, Inc., Plaintiff, *v.* United States Lines Company, Defendant.

City Court of the City of New York, Special Term, New York County, March 25, 1953, on reargument, May 18, 1953.

*Martin M. Baxter* for defendant.

*Erwin Millimet* for plaintiff.

Schimmel, J. This is a motion by the defendant under subdivision 5 of rule 107 of the Rules of Civil Practice to dismiss the complaint. The action was brought to recover damages for an alleged failure of the defendant to make timely delivery of certain goods which were consigned to the plaintiff.

On December 15, 1950, there were delivered to defendant in Yokohama, Japan, four cases of silk piece goods for transportation aboard the " SS Pioneer Dale ", one of defendant's vessels. The goods were consigned to the plaintiff in New York under the terms of a certain bill of lading issued to the shipper. The vessel arrived in New York on January 21, 1951. The plaintiff says that on that day it presented the bill of lading to the

defendant and demanded the goods but that the defendant did not deliver them until February 23, 1951, and February 28, 1951. The plaintiff claims that by reason of such delay in delivery it suffered substantial damage by loss of market. This action was commenced on November 10, 1952.

The defendant contends that the action, which was thus instituted more than a year after the delivery of the goods, is barred by statute, the United States Carriage of Goods by Sea Act of 1936, and also by a stipulation in the long-form bill of lading which covered the shipment.

The pertinent provision of subdivision (6) of section 3 of the Carriage of Goods by Sea Act (U. S. Code, tit. 46, § 1303, subd. [6]), reads as follows: " In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered ". The plaintiff argues that this statutory limitation does not apply here because the case does not involve the loss of or physical damage to the goods but delay in making delivery and damage by loss of market. I interpret the words " loss or damage " in this statute as relating, as does all of section 3, to physical loss or damage. Section 3 should be read in its entirety with a proper regard for the interrelationship of its separate provisions. It sets forth the obligation of the carrier " to exercise due diligence to — (a) Make the ship seaworthy; (b) Properly man, equip, and supply the ship; (c) Make the holds, refrigerating and cooling chambers, and all other parts of the ship in which goods are carried, fit and safe for their reception, carriage, and preservation." It also requires the carrier to " properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." In short, the section deals with the duty of the carrier safely to keep and carry the cargo entrusted to him and it makes him liable for any lack of " due diligence " in the custody and carriage of the goods resulting in their loss or physical damage.

When all parts of the section are thus integrated and its origins and purposes are considered, it is reasonable to infer that the words " loss or damage " relate to physical loss or damage and not loss of market. The section is replete with references which can apply only to physical loss or damage. For example, subdivision 6 contains the following: " If the loss or damage is not apparent, the notice must be given within three days of the delivery." Also: " Provided, That if a notice of loss or damage, either apparent or concealed, is not

given as provided for in this section, that fact shall not affect or prejudice the right of the shipper to bring suit within one year after the delivery of the goods or the date when the goods should have been delivered.''

It appears to be generally assumed that this section deals with the carrier's duty to '' care '' for the cargo. The legislative background of the section is discussed with clarity and learning by CLARK, J., in *United States* v. *Farr Sugar Corp.* (191 F. 2d 370, 374–375). Judge CLARK reminds us that before the passage of the Harter Act in 1893 (U. S. Code, tit. 46, §§ 190–195) a common carrier bore '' the liability of an insurer against all losses, except only from such irresistible causes as the act of God and public enemies ''; that the Harter Act relieved the carrier of '' liability for losses from faults or errors in navigation or dangers of the sea '' if only he exercised '' due diligence to make the ship seaworthy '' and was free from '' negligence in the care and delivery of cargo ''; but that it '' definitively outlawed clauses or covenants of the bill of lading relieving the vessel's owners or agents from '' liability for '' negligence in the care and delivery of cargo or from any obligation to exercise due diligence to make the ship seaworthy ''. Coming down to the Carriage of Goods by Sea Act of 1936, Judge CLARK said (p. 376) : '' But the latter Act carries on the policy of the earlier statute, removing, however, the condition of due diligence for the exemption from liability of the carrier or ship for ' act, neglect, or default of the master, mariner, pilot, or the servants of the carrier in the navigation or in the management of the ship.' 46 U. S. C. A. § 1304 (2) (a). It also contained a prohibition against clauses lessening liability other than as provided in the Act. 46 U. S. C. A. § 1303 (8), discussed below.'' By giving thought to the background of section 3 of the Carriage of Goods by Sea Act of 1936 I am strengthened in my belief that the section has to do only with the carrier's responsibility for the physical care and safe delivery of the goods and that the words '' loss or damage '' in subdivision 6 do not relate to damage by loss of market.

In *Johnson* v. *Missouri, Kansas & Texas Ry. Co.* (107 App. Div. 374, 382) the words '' loss or damage '' in a railroad bill of lading were construed by the court to refer only to physical loss or damage. As MILLER, J., said: '' Loss or damage to the property and injury to the shipper resulting from loss of market are quite distinct. * * * Manifestly the only loss or damage which would occur on its own road would be loss of or damage to the property itself. The loss or damage resulting from a

falling market occurs after the property has reached its destination." Analogous reasoning suggests a like construction of the same words in the Federal statute. In parallel circumstances these have become words of art to which a special meaning is attributable.

Similarly, it was held that a condition printed·on the back of a shipping receipt exempting a railroad "from any liability unless notice of loss or damage is given to the carrier in writing" within a specified time "has no application to loss or injury to the shipper from a falling market caused by delay" (*Frey* v. *New York Central & H. R. R. R. Co.*, 114 App. Div. 747, 751–752). Again, the words "damages for loss of or injury to" livestock were construed not to apply to loss of market. (*McElwain* v. *Union Pacific R. R. Co.*, 101 Neb. 484.) A number of similar cases from various jurisdictions have been collected in American Law Reports (Vol. 1, Note, pp. 538–541.)

I therefore conclude that subdivision 6 of section 3 of the Carriage of Goods by Sea Act of 1936 does not bar this action.

But the defendant also relies upon a clause in the long-form bill of lading which covered this shipment and which reads as follows: "In any event, the carrier and the ship shall be discharged from all liability for any loss, damage or delay unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered." Manifestly, this provision is applicable to an action for "delay" and loss of market.

Answering this contention, the plaintiff argues that the contractual limitation is unenforcible because it contravenes the following provision of subdivision 8 of the same section 3 (U. S. Code, tit. 46, § 1303, subd. [8]): "Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this Act [or section 25 of Title 49], shall be null and void and of no effect." I think, however, that this provision of section 3 prohibiting the lessening of the liability of the carrier does not apply to the carrier's liability for delay in delivery and loss of market for the very reason that it is a part of section 3, which, as we have seen, has nothing to do with liability for loss of market but only with the care, custody and safe carriage of the goods, and with the carrier's liability for physical loss or injury. The carrier is forbidden by this statutory provision only from "lessening

*such* liability '' (emphasis supplied). The word '' such '' necessarily refers to '' liability for loss or damage to or in connection with the goods, arising from negligence, fault or failure in the duties and obligations provided in *this* section '' (emphasis supplied). Section 3 is concerned only with the carrier's obligation to '' properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried '', and not with his obligation to make timely delivery. Plaintiff suggests that the words '' in connection with '' in subdivision 8 enlarge the meaning of the prohibition against lessening of liability, but I do not believe that these words can be so taken from context.

Thus there is nothing in section 3, or elsewhere in the act, to prevent a carrier from limiting his liability for failure to make timely delivery, provided the limitation be a reasonable one. It is not contended, and certainly such a contention would not hold, that a one-year period of limitation for the bringing of suit is unreasonably short or otherwise unconscionable. The action is therefore barred because it was brought after the expiration of the period of limitation provided in the bill of lading.

The words '' time limited by law '' in subdivision 5 of rule 107 of the Rules of Civil Practice apply as well to a limitation of time for the bringing of an action prescribed by agreement of the parties as to a statutory period of limitation (*Califano* v. *Citizens Ins. Co. of New Jersey,* 163 Misc. 542, affd. 252 App. Div. 731, motion for leave to appeal denied, 276 N. Y. 687).

Accordingly, the motion to dismiss the complaint under subdivision 5 of rule 107 of the Rules of Civil Practice is granted. Judgment may be entered in favor of the defendant.

(On reargument, May 18, 1953.)

Upon reargument: It now appears that plaintiff's counsel, through an oversight on their part, presented to this court the wrong blank form bill of lading. The court decided this motion upon the basis of the '' long form '' bill of lading which was submitted by plaintiff's counsel. The form of bill of lading which plaintiff's counsel handed to the court and upon the basis of which such counsel sought a decision of the motion is one which is now used by defendant, at least for some of its services. Counsel for the respective parties are now in agreement, however, that at the time of the transaction here involved and for this transaction, another form was used; that such form contained the following provision: '' In any event, the carrier and

the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered ".

This provision appears to me to apply only to physical loss or damage and not to loss of market; this is so for the reasons indicated in my original opinion. The provision is substantially the same as those of the Carriage of Goods by Sea Act of 1936, subdivision 6 of section 3 thereof (U. S. Code, tit. 46, § 1303, subd. [6]), and should be interpreted like the statute. Indeed, it is reasonable to infer that the bill of lading in question was intended to conform in this respect to the act, and not to deviate from it.

Moreover, apart from any statute, such a clause in a bill of lading has been construed to apply only to physical loss or damage and not to loss of market. This is indicated by the authorities cited in my original opinion (*Johnson* v. *Missouri, Kansas & Texas Ry. Co.,* 107 App. Div. 374; *Frey* v. *New York Central & H. R. R. R. Co.,* 114 App. Div. 747; *McElwain* v. *Union Pacific R. R. Co.,* 101 Neb. 484).

Accordingly, upon this reargument I hold that the present action, which was commenced more than a year after the delivery of the goods, is not barred by the above-quoted clause of the said " long form " bill of lading.

The " long form " bill of lading which plaintiff's counsel by mistake submitted to the court seems to have been put in use after the completion of the contract of shipment here involved. Such bill of lading, upon which the original decision was based, would, of course, bar the present action since it reads as follows: " In any event, the carrier and the ship shall be discharged from all liability for any loss, damage *or delay* unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered." (Emphasis supplied.) As indicated in the original opinion, the words " or delay " make all the difference.

Upon this reargument the motion of the defendant under rule 107 of the Rules of Civil Practice to dismiss the complaint is denied.