Comfort A. ANYANGWE

v.

NEDLLOYD LINES, et al.

Civ. No. JFM–95–24.

United States District Court,
D. Maryland.

Nov. 27, 1995.

Donald Louis Schlemmer, Washington, DC, Bokwe Godwill Mofor, Silver Spring, MD, for plaintiff.

Manfred W. Leckszas, George H. Falter, III, Ober, Kaler, Grimes & Shriver, Baltimore, MD, for defendant Nedlloyd Lines (U.S.A.) Corp.

Onkar N. Sharma, Silver Spring, MD, for defendant Export of International Appliances, Inc.

## MEMORANDUM

MOTZ, Chief Judge.

Plaintiff is Comfort Anyangwe. Defendants are Nedlloyd Lines (U.S.A.) Corp. ("Nedlloyd") and Export of International Appliances, Inc. ("EIA"). Plaintiff brings this action for breach of contract against both defendants arising out of agreements to ship Plaintiff's belongings from Silver Spring, Maryland to Douala, Cameroon. Discovery has been completed and both defendants have moved for summary judgment.

## I.

In late September 1993, Plaintiff Anyangwe needed to ship certain personal belongings and food from Silver Spring, Maryland to Douala, Cameroon. Anyangwe first contacted Bhadresh Dhila, Vice President of Defendant EIA, to help make arrangements. EIA provides freight forwarding services, including the packaging of cargo, transportation to the nearest port and the selection of a shipping company to carry goods by sea. Anyangwe contends that during their negotiations she told Dhila about her wedding scheduled for January 1, 1994 and that she needed delivery in Cameroon by early December, 1993. Anyangwe's Dep. at 21–26; Dhila Dep. at 30. She further contends that he assured her delivery would be made by December 6. *See* Anyangwe Dep. at 33.[1] Plaintiff brought her belongings to EIA for shipment on October 11, 1993, at which point EIA issued to her an invoice representing the terms of their agreement. *See* Def. Nedlloyd's Ex. D. The invoice is silent as to the time of delivery.

EIA hired Hydra Management, Inc. to transport Plaintiff's cargo by truck to the port at Norfolk, and selected Defendant Nedlloyd to ship Plaintiff's goods by sea from Norfolk to Douala. The cargo arrived at Norfolk undamaged, and Nedlloyd issued a clean bill of lading to Plaintiff. The S. Performance, with Plaintiff's container aboard, left Norfolk for Felixstowe, England on October 23, arriving there sometime in mid-November.

In Felixstowe, the cargo was scheduled to be transferred to the ship Therese Delmas which left Felixstowe for Douala on November 11. According to Nedlloyd, the S. Performance did not arrive in time for the relay to the Therese Delmas. *See* Aviles Dep. at 42, 45. Plaintiff's cargo was therefore loaded onto the St. Roch in Felixstowe which left for Douala on December 13. The St. Roch stopped in Abidjan, Ivory Coast on its way to Douala to unload other cargo and, in the process, Nedlloyd had to remove Plaintiff's container and restowe it. Plaintiff alleges

---

1. Dhila denies these contentions but for summary judgment purposes they must, of course, be assumed to be true.

that the St. Roch also stopped at Apapa, Nigeria for the same purpose. Plaintiff further contends that Nedlloyd wrongfully discharged her container in Apapa, delaying shipment to Cameroon by several weeks.

Plaintiff's container arrived in Douala on January 11, 1994, eleven days after her wedding. Plaintiff asserts that the wedding was a "fiasco" without the food and other items she had shipped. She further alleges that as a result, she prematurely gave birth to a child who requires constant medical attention, and that she continues to suffer pain, severe trauma, and depression.

## II.

■ As a preliminary matter, Nedlloyd asserts that Plaintiff has sued the wrong party. Defendant Nedlloyd Lines (U.S.A.), Inc. is only an agent of the carrier Nedlloyd Lijnen, a Dutch corporation. Since Plaintiff is suing for breach of the contract for carriage, she should be suing the carrier (Nedlloyd Lijnen), not its agent (Nedlloyd Lines (U.S.A.)) which merely quotes rates, takes bookings and arranges to have goods loaded onto Nedlloyd Lijnen ships. The bill of lading clearly notes Nedlloyd Lijnen as the carrier.

■ Defendant Nedlloyd's argument seems to be meritorious. However, Nedlloyd commendably has addressed Plaintiff's claims on the merits, and I will do likewise,

assuming that Plaintiff brought suit against the correct Nedlloyd entity.[2]

## III.

■ Plaintiff's claim against Nedlloyd is asserted under The Carriage of Goods By Sea Act ("COGSA"), 46 U.S.C.App. § 1300 *et seq.* Enacted in 1936, COGSA is a comprehensive statute intended to limit the liability of carriers (shipping companies) engaged in international shipping. *Unimac Co., Inc. v. C.F. Ocean Service, Inc.,* 43 F.3d 1434, 1436 (11th Cir.1995); *SPM Corp. v. M/V Ming Moon,* 965 F.2d 1297, 1300–01 (3rd Cir.1992). At the same time, the statute provides a basis for liability up to $500 per package in case of carrier fault causing damage to a shipper's cargo, even if the parties contract out of carrier liability. *See* 46 U.S.C.App. § 1304(5); *SPM Corp.,* 965 F.2d at 1300–01. Shippers can avoid the $500 dollar limitation by (1) declaring the excess value of cargo before shipment, or (2) showing that the carrier unreasonably deviated from course during shipment. 46 U.S.C.App. § 1304(4)–(5); *see Caterpillar Overseas, S.A. v. Marine Transport, Inc.,* 900 F.2d 714, 719, 721 (4th Cir.1990). A shipper must bring an action for damages within one year after delivery of the goods. 46 U.S.C.App. § 1303(6).[3]

■ Section 1312 provides that COGSA applies to "all contracts for carriage of goods by sea to or from ports of the United States

**2.** Nedlloyd also contests this court's subject matter jurisdiction. To the extent that Plaintiff is relying upon the parties' diversity of citizenship, Nedlloyd's argument seems correct. Plaintiff is an alien and, as such, clearly has the right to sue in federal court. However, diversity jurisdiction does not encompass suits between citizens of different foreign states, and, as indicated in the text, Nedlloyd Lijnen, a Dutch corporation, appears to be the proper Nedlloyd defendant.

Plaintiff also relies, however, upon this court's federal question jurisdiction. Nedlloyd argues that Plaintiff has no claim under the Carriage of Goods By Sea Act ("COGSA"), 46 U.S.C.App. § 1300 *et seq.,* because COGSA provides no remedy for delays in discharging cargo (as opposed to loss or damage to cargo—the only type of claim that Plaintiff asserts here.) The fallacy in this argument is that the extent of the coverage of COGSA is itself a federal question. Moreover, although Plaintiff does not invoke it, it appears

that this court has federal maritime jurisdiction under 28 U.S.C. § 1333(1).

**3.** Defendant Nedlloyd claims that the one-year limitation provision in section 1303(6) of COGSA does not apply to claims for "loss or damage" due to delay. Def. Nedlloyd's Reply at 9–11. According to Nedlloyd, that limitation only applies to claims for physical loss or damage, and therefore the 9–month limitation period provided in their bill of lading governs. Most courts have found the statutory language broad enough to encompass claims of loss due to delay. *See Commercio Transito Internazionale, Ltd. v. Lykes Bros. S.S. Co.,* 243 F.2d 683, 686 (2nd Cir.1957); *Badhwar v. Colorado Fuel & Iron Corp.,* 138 F.Supp. 595 (S.D.N.Y.1955), *aff'd,* 245 F.2d 903 (2nd Cir.1957), *cert. denied,* 355 U.S. 862, 78 S.Ct. 95, 2 L.Ed.2d 68 (1957); *American Oil Co. v. S.S. Ionian Challenger,* 257 F.Supp. 540 (S.D.N.Y.1965), *aff'd,* 366 F.2d 509 (2nd Cir. 1966); *but see United Merchants & Mfrs. v. United States Lines Co.,* 204 Misc. 989, 126 N.Y.S.2d 560 (N.Y.Sup.Ct.1953).

in foreign trade." 46 U.S.C.App. § 1312. Furthermore, COGSA only "covers the period from the time when the goods are loaded on to the time they are discharged from the ship." § 1301(e). Since the dispute here between Plaintiff and Defendant Nedlloyd arises out of a contract for carriage of Plaintiff's goods from Norfolk, Virginia to Douala, Cameroon, COGSA governs the contract. The contract is the bill of lading that Nedlloyd issued to Plaintiff after receiving Plaintiff's cargo at Norfolk, stating the terms of shipment. *See Wemhoener Pressen v. Ceres Marine Terminals, Inc.,* 5 F.3d 734, 738 (4th Cir.1993); *B. Elliott (Canada) Ltd. v. John T. Clark & Son,* 704 F.2d 1305, 1307 (4th Cir.1983); *see generally,* Gilmore, G., & C. Black, Jr., *The Law of Admiralty* § 3–1 (2nd ed. 1975).

### A.

■ Plaintiff claims that her contract with Nedlloyd guaranteed shipment of her Cargo to Cameroon by December 6, 1993. The bill of lading itself clearly negates any such guarantee. Paragraph 7(4) specifically provides: "The Carrier does not undertake that the Goods shall arrive at the Port of Discharge or Place of Delivery at any particular time or to meet any particular market or use and the Carrier shall in no circumstances whatsoever and howsoever arising be liable for direct, indirect or consequential loss or damage caused by delay."

■ Plaintiff contends, however, that Defendant EIA, allegedly as Nedlloyd's agent, orally guaranteed delivery by December 6th. If such guarantees were made by EIA, evidence of them clearly would be barred by the parol evidence rule since the terms of the bill of lading directly contradict any prior or contemporaneous representation that was made concerning the timing of delivery. *See generally Delmarva Drilling Co. v. Tuckahoe Shop. Ctr., Inc.,* 268 Md. 417, 302 A.2d 37, 41 (1973). Moreover, there is no evidence in the record to support Plaintiff's

claim that EIA was Nedlloyd's agent. The doctrine of apparent agency, upon which Plaintiff seemingly relies, applies when a principal holds someone out as his agent and a third party justifiably relies on these representations. *See Metco Prods., Inc. v. NLRB,* 884 F.2d 156, 159 (4th Cir.1989). Here, there is no evidence that Nedlloyd ever held EIA out as its agent or that EIA claimed it was an agent of Nedlloyd when it negotiated with Plaintiff. Indeed, Plaintiff admits she never heard of Nedlloyd before this litigation began.[4]

### B.

■ Plaintiff next claims that Defendant Nedlloyd deviated from course during the shipment of Plaintiff's cargo. By raising the issues of deviation, Plaintiff attempts to accomplish two things. First, deviation itself will provide the basis for her breach of contract claim, entitling her to damages resulting therefrom. Second, proving unreasonable deviation would oust the contract from COGSA's $500 per package ceiling on liability. *See Caterpillar Overseas, S.A.,* 900 F.2d at 721. Plaintiff therefore alleges deviation in three respects: (1) Nedlloyd geographically departed from course when it sent Plaintiff's shipment to Apapa, Nigeria before Douala, Cameroon, (2) Nedlloyd's ship stopped at Abidjan, Ivory Coast and restowed Plaintiff's cargo, and (3) Nedlloyd unreasonably delayed shipment and Plaintiff's packages arrived several weeks behind schedule.

■ The doctrine of deviation developed before COGSA was enacted. Its purpose was to alleviate the harsh losses suffered by shippers when carriers contracted out of liability and then took risks not contemplated by the parties. *Sedco, Inc. v. S.S. Strathewe,* 800 F.2d 27, 31 (2nd Cir.1986); *see generally,* Michael F. Sturley, 2A *Benedict on Admiralty* § 121 at 12–1 to 12–6 (7th ed. 1992). When the ship, without excuse, voluntarily departed from the usual contrac-

---

4. Plaintiff makes an alternative argument that Nedlloyd's shipping schedules guaranteed delivery within 45–60 days. This argument also fails. Shipping schedules provide no guarantee of delivery by a certain date, only an estimate. *See*

*Parnass Intern. Trade & Oil Corp. v. Sea–Land Service, Inc.,* 595 F.Supp. 153, 155–56 (S.D.N.Y. 1984). If they are not incorporated into a bill of lading (which they were not here), they are not part of the parties' contract.

tual or commercial route, the contractual provision barring liability was nullified, and the carrier became the insurer for liability purposes. *Sedco, Inc.*, 800 F.2d at 31. Some courts after COGSA have continued application of the doctrine where carriers invoke the $500 dollar limitation on liability. In short, these courts have held that where carriers unreasonably deviate from course, the contracts for carriage are ousted from COGSA's $500 per package ceiling and carriers are subject to unlimited liability. *See, e.g., Sedco, Inc.*, 800 F.2d at 30–32; *but see, e.g., Atlantic Mut. Ins. Co. v. Poseidon Schiffahrt*, 313 F.2d 872, 874 (7th Cir.1963) (deviation doctrine no longer applies in post-COGSA era; $500 limit applies "in any event"), *cert. denied,* 375 U.S. 819, 84 S.Ct. 56, 11 L.Ed.2d 53 (1963).

Those courts that have applied the doctrine post-COGSA recognize its tenuous status and its penal effect on carriers. *Unimac,* 43 F.3d at 1437 (citations omitted). They have applied the doctrine sparingly, limiting it to geographical departures and unauthorized on deck stowage. *See, e.g., Sedco, Inc.,* 800 F.2d at 31–32. For instance, *Sedco* rejected extension of the doctrine, holding that delay in shipment does not constitute unreasonable deviation. *Id.* at 32 n. 2. Although the Fourth Circuit has not expressly marked the bounds of unreasonable deviation, it has adopted the *Sedco* decision in dictum. *Caterpillar Overseas, S.A.,* 900 F.2d at 721.

■ Turning to the facts of this case, Plaintiff's contention that Nedlloyd's delay in shipment constituted unreasonable deviation clearly is without merit. Unreasonable delay alone does not constitute deviation. *Sedco, Inc.,* 800 F.2d at 32 n. 2. Furthermore, Nedlloyd did not unreasonably delay shipment. The carrier left Norfolk, Virginia on October 23, 1993 and arrived in Cameroon on January 11, 1994, nineteen days after the estimated 60–day period. This delay was due, in part, to port congestion at Felixstowe, England. *See* Aviles Dep. at 45. "It is just such a potential for ... port congestion which prohibits carriers from making hard and fast promises such as the one plaintiff contends existed here." *Parnass Intern. Trade & Oil,* 595 F.Supp. at 156 (transocean-

ic shipping involves many risks and 18–day delay is not in and of itself unreasonable); *see also Quesoro USA, Inc. v. Lykes Bros. Steamship Co., Inc.,* 1995 WL 329301, 1–2 (S.D.N.Y.1995) (7 day delay not unreasonable; parol evidence rule barred evidence of prior oral representations); *Pioko Fashions, Inc. v. American President Lines, Ltd.,* 1993 WL 597151, 2 (W.D.Wash.1993) (two-week delay in 10,000 mile cargo delivery not unreasonable). Thus, the 19–day delay, in and of itself, did not constitute breach or deviation.

■ Equally untenable is Plaintiff's contention that Nedlloyd geographically deviated when it stopped at Abidjan, Ivory Coast to deliver other cargo and restowed Plaintiff's shipment in the process. Intentional restowage at an intermediate port is neither a deviation nor a quasi-deviation. *SPM Corp.,* 965 F.2d at 1304. "Conduct that is customary in the trade is not a deviation from the contractual voyage because such contracts ordinarily presume that the parties will follow the customs and usages of the maritime trade." *Id.* (citing *Caterpillar Overseas, S.A.,* 900 F.2d at 721–22). While the bill of lading did not mention that Nedlloyd would be stopping at Abidjan, it was customary for Nedlloyd to do so since it was an intermediate port, and therefore Plaintiff's claim of deviation on this basis must fail. *Id.; see also Parnass Intern. Trade & Oil,* 595 F.Supp. at 156 (dictum) (relay system using several ships and ports of call is customary in the shipping trade).

■ Finally, Plaintiff alleges that Plaintiff's container landed in Apapa, Nigeria, and that this constituted an unreasonable deviation from the normal and customary route. Assuming that Plaintiff's claim in this regard is legally cognizable, *but see Caterpillar Overseas S.A.,* 900 F.2d at 721, *Sedco, Inc.,* 800 F.2d at 31–32, the claim fails on the evidence on the summary judgment record. There is, as Plaintiff asserts, at least a factual question presented as to whether the ship carrying the containers stopped at Apapa on its way to Cameroon; Nelson Aviles, Nedlloyd's Claim Manager, stated on deposition that it did. However, a stop at Apapa to discharge other cargo would not constitute deviation in and of itself since Apapa is an

intermediate port along the customary route to Douala, Cameroon. *See SPM Corp.*, 965 F.2d at 1304. The material issue is whether, as the Plaintiff contends, Nedlloyd mistakenly discharged the container in Apapa only to discover several weeks later that it was intended for Douala, Cameroon.

To this end, Plaintiff points to the "Transhipment Pre–Advice" dated November 5, 1993 which indicated that the container would be loaded at Felixstowe aboard a ship called the Therese Delmas, and that its final destination was Apapa, Nigeria (code QAP). *See* Pl.'s Ex. F. This is the only competent evidence Plaintiff proffers suggesting that her package was wrongfully discharged.[5] Nedlloyd persuasively argues that this was merely typographical error. *See* Def. Nedlloyd's Reply at 11–16. Indeed, the November 5 Pre–Advice itself suggests that this was the case. *See* Def. Nedlloyd's Ex. F. Plaintiff's package was marked for Apapa, to arrive on December 6, 1993. *Id.* Yet all the other containers marked for Apapa on the Pre–Advice had an ETA November 28. *Id.* Clearly, the ship was to arrive in Douala on December 6, after it had made its stop in Apapa on November 28. Nedlloyd discovered this error and issued an Amended Transhipment Pre–Advice on December 9. *Id.* This Amendment correctly identified Douala, Cameroon as the destination for Plaintiff's container and rescheduled the estimated times for departure from Felixstowe and discharge at Douala, December 13, 1993 and January 8, 1994 respectively.[6] Most importantly, this Amendment was issued before the Plaintiff's container left Felixstowe. An interoffice memorandum dated January 4, 1994 confirmed that Plaintiff's container was loaded aboard the St. Roch on December 13. Def. Nedlloyd's Ex. F. It arrived in Douala on January 11. Aviles Dep. at 53. Since Plaintiff offers no other evidence that her

container was discharged in Apapa to rebut Nedlloyd's clear explanation of the error in the November 5 Transhipment Pre–Advice, no reasonable juror could find that the container was wrongly discharged in Apapa.

### III.

Plaintiff initially contacted Mr. Dhila, Vice President of EIA, to arrange shipment of her goods to Douala. EIA essentially agreed to provide freight forwarding services. In effect, EIA agreed to act as Plaintiff's agent in getting her belongings to Douala, Cameroon. *See Ferrex Intern., Inc. v. M/V Rico Chone*, 718 F.Supp. 451, 453 (D.Md.1988); *see also Ingersoll Mill. Mach. Co. v. M/V Bodena*, 829 F.2d 293, 302 (2nd Cir.1987) (implying that agreement between freight forwarder and shipper is one of agency).

In determining whether EIA breached its agreement with Plaintiff, I must look to the terms of the contract. The final written expression of EIA's agreement with Plaintiff is not the bill of lading which constitutes Nedlloyd's contract with her, but EIA's shipment invoice dated October 11, 1993. *See* Pl.'s Ex. E. This invoice provides that EIA would ship a container with Plaintiff's household goods and personal effects (including a new deep freezer and two blenders it purchased from EIA) to Douala, Cameroon for a total price of $4,270. Nowhere does the invoice provide that EIA guaranteed delivery in Douala by a date certain, nor does it suggest that "time is of the essence."

Plaintiff proffers evidence that she and EIA had a prior oral understanding that, as part of the overall agreement, her cargo would arrive in Cameroon before her wedding. Assuming there was a prior understanding to this effect, such evidence is

---

5. She also offers several hearsay and double hearsay declarations by her brother and others who say her cargo was discharged in Nigeria. Anyangwe Aff. at ¶¶ 35, 46. These statements cannot be considered on a motion for summary judgment. *See* Fed.R.Civ.P. 56(e).

6. Apparently the S. Performance, the ship that took Plaintiff's container from Norfolk, Virginia to Felixstowe, arrived late in Felixstowe due to port congestion. *See* Aviles Dep. at 44–45. The

record indicates that the container was supposed to be transferred to the Therese Delmas, leaving Felixstowe on November 11, 1993 and arriving in Douala on December 6. Since the S. Performance did not arrive in Felixstowe in time, the container was put on the next ship to Douala, the St. Roch. The Amended Transhipment Pre–Advice of December 9 reflects these changes. *See* Def. Nedlloyd's Ex. F.

barred by the parol evidence rule. "Parol evidence is inadmissible to vary, alter or contradict a writing which is complete and unambiguous:...." *Delmarva Drilling Co., Inc.,* 302 A.2d at 41. When written contracts are silent as to the time for performance, most courts hold that such a contract has an implied "reasonable time" provision. Williston, *A Treatise on the Law of Contracts,* § 640 (3d ed. 1961). Plaintiff's proffer of contemporaneous oral agreements indicating an agreed on time for delivery would therefore conflict with or vary this implied term. Thus, her proffer is barred by the rule that "evidence of a parol agreement that performance should be made at a particular time is inadmissible where the writing specifies no time for performance." *Id.*

## IV.

 Assuming that Nedlloyd and/or EIA did breach their contracts with Plaintiff, her claims would still fail. Plaintiff admits that her cargo suffered no physical damage, or loss in market value, due to the shipping delay. Anyangwe Dep. at 63. Plaintiff instead seeks consequential damages resulting from the alleged breach. Such damages, she contends, are the result of the emotional distress and pain inflicted upon her by defendants when they did not deliver her goods in time for her wedding. Her wedding was "a fiasco" and Plaintiff suffered such emotional trauma from the experience that she gave premature birth to her child who requires constant medical attention.[7]

 Consequential and special damages are recoverable for breach of contracts for carriage under COGSA since the difference between the market value of the damaged goods and their value had they not been damaged at the port of destination is not always the appropriate measure of damages. *See, e.g., Affiliated Foods v. Puerto Rico Marine Management, Inc.,* 645 F.Supp. 838, 840–44 (D.P.R.1986) (quoting extensively from *Hadley v. Baxendale,* 156 Eng.Rep. 145 (1845)). However, if consequential damages are to be awarded, the breaching party must have had reason to foresee that such harm would result.[8] *Id.* at 841. In order to foresee such harm, special circumstances must be actually communicated to the breaching party, and the harm done must be the natural consequence of the breach. *See id.* at 841–842 (quoting *Hadley* ); *see also Mojica v. Autoridad de las Navieras de Puerto Rico,* 1993 WL 724807, 3 (D.P.R.1993) (special circumstances must be brought home to the party to be charged). Here, Plaintiff has put forth no evidence that she communicated to Nedlloyd the special circumstances of her wedding. Indeed, she admits she never spoke with Nedlloyd representatives, and never even heard of Nedlloyd Lines until after this lawsuit began. Anyangwe Dep. at 76–77. Therefore, the claim against Nedlloyd for damages resulting from breach must fail as a matter of law.

 As to EIA, assuming that it had knowledge of Anyangwe's wedding, Plaintiff still could not recover the damages for the extreme pain and suffering that she allegedly experienced, and certainly not the damages sustained by virtue of the premature birth of her child. Under the law, these damages are not the natural and foreseeable consequences of EIA's alleged breach. *See Affiliated Foods,* 645 F.Supp. at 841–42; *see also Mojica,* 1993 WL 724807, 3 (pain, suffering, and mental anguish from delayed shipment of truck not foreseeable consequence of breach). Thus, the claim for damages against EIA must likewise fail.

While it is regrettable that Plaintiff's shipment did not arrive in time to help make her wedding the joyous occasion it should have been, her factual allegations against the de-

---

**7.** Plaintiff also seeks punitive damages. She clearly is not entitled to them because she has failed to offer evidence of intentional, tortuous conduct on the part of Nedlloyd or EIA. *See, e.g., B.F. McKernin & Co., Inc. v. U.S. Lines, Inc.,* 416 F.Supp. 1068, 1073 (S.D.N.Y.1976) (even if defendant acted with gross indifference to plaintiff's rights, neither intentional nor morally culpable conduct was present).

**8.** The scope of foreseeability in claims for consequential damages resulting from breach of contract is much narrower than the scope of foreseeability of damages in tort. *See Affiliated Foods,* 645 F.Supp. at 841 n. 3.

fendants are simply not actionable. Accordingly, defendants' motions for summary judgment will be granted. A separate order to that effect is being entered herewith.

### ORDER

For the reasons stated in the memorandum entered herewith, it is this 27th day of November 1995

ORDERED that

1. The motions for summary judgment filed by Defendants Nedlloyd Lines U.S.A. Corp. and Export of International Appliances, Inc. are granted; and

2. Judgment is entered in favor of Defendants against Plaintiff.